## P. FREDERICK ETZEL *vs.* WILLIAM DUNCAN.

*Bill by Client to Vacate Contract of Compensation with Counsel—Undue Influence—Evidence.*

Plaintiff's bill in this case alleged that he had employed the defendant as his counsel to conduct certain litigation and had signed a paper agreeing to pay defendant everything over and above a certain amount which defendant might obtain in settlement of the suit, and had afterwards executed a receipt for the sum paid him; that plaintiff executed these papers believing that the litigation had been settled for a certain sum, but that he afterwards learned that a larger amount had been paid to the defendant. The bill alleged that the agreement and release had been obtained by undue influence, and asked that the same be annulled. *Held,* that the evidence fails to support the allegations of the bill, but on the contrary shows that the plaintiff had full knowledge of the terms upon which his suit had been compromised, and that the amount retained by the defendant was that which the plaintiff had agreed should be retained by him.

*Decided January 13th, 1910.*

Appeal from the Circuit Court No. 2 of Baltimore City (SHARP, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Emil Budnitz* and *J. Cookman Boyd,* for the appellant.

*William S. Bryan, Jr.,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellant for the reformation of an agreement and receipt executed by him and delivered to his counsel, the appellee, and to compel the latter to pay him the difference between the amount actually received by the appellee and the amount which, it is alleged, the appellant agreed to pay him for certain professional services, on the ground that said agreement and receipt were procured by the undue influence of the appellee.

The bill was answered by the appellee, denying that the receipt and agreement were obtained by undue influence, and averring that they are in entire conformity with an oral understanding, had at the time he was employed, as to the amount he was to receive for his services, with the exception of a modification of the original agreement in favor of the appellant.

The learned Court below, after considering the evidence, which was produced in open Court, and after a hearing, dismissed the bill, and unless we are convinced by the record in the case that there was error in this ruling, we must affirm the order appealed from.

The appellant, who was improvident, and had always been addicted to habits of idleness and dissipation, returned to Baltimore after an absence of fourteen years, and with the assistance of an acquaintance or confederate, who seems to have had some experience in such matters, began to investigate the affairs of his father, who was said to have been miserly and to have acquired considerable property, with the hope of finding some means by which he could secure a portion of his father's estate. It had been the habit of his father to deposit in a savings bank twenty-five ddollars a year for each of his children in their names, and they found that the amounts so deposited for the appellant had greatly increased by the accumulation of interest. The officers of the savings bank would not, however, pay him more than $40.00 without the production of his bank book, and his friend got one-half of that. They, or rather his friend, Mr. Behrens, also dis-

covered that his father and mother had conveyed to his, the appellant's sister, Miss. Julia Etzel, property estimated to be worth $49,000.00, and they immediately determined to institute proceedings against her, on the ground that the conveyances were the result of undue influence, with the view, it would seem from the statement of Mr. Behrens, of securing something from her by effecting a compromise. With that end in view, they went to see the appellee, and to employ him to take charge of the case and to file a bill against his sister to set aside the conveyances to her. The appellee agreed to take the case, not, however, so far as the record shows, for the purpose of forcing a compromise, but with the view of trying the case; the bill was filed, and some months thereafter, in June, 1906, the appellee was informed by Mr. Behrens that Miss Etzel, the defendant, was willing to pay $4,000.00 in settlement of the case, which compromise the appellant said he was willing to make, whereupon the appellee took from him a written authority, dated June 18, 1908, to settle the case for $4,000.00, and an agreement not to settle the case without his consent, and to pay him for his services, stating, at the time, that he thought he could secure a more advantageous settlement. The same day, with the consent of her attorney, Mr. Smith, the appellee went to see the defendant, Miss Etzel and obtained from her the following agreement:

"June 18/06.

I hereby agree to pay William Duncan, Att'y for P. F. Etzel, $3,000.00 in cash, and convey three ground rents, to wit: 1102, 1104 and 1106 Columbia, of $42. each, and the said Duncan agrees to dismiss the case now pending in the Circuit Court No. 2.

Witness my hand and seal.        JULIA ETZEL. (Seal)
Witness: MISS CECILLA ROSS."

The next day the appellant went to the office of the appellee and executed the following agreement in the presence of Miss New, who was employed in the appellee's office.

"BALTIMORE, June 19, 1906.

I, Peter Frederick Etzel, in consideration of the sum of one dollar, do hereby agree to pay to William Duncan for his services all over three thousand dollars for procuring me the money or ground rents in settlement of the case of mine against my sister, Julia Etzel, now pending in the Circuit Court No. 2.

Witness my hand and Seal.      P. FRED ETZEL.   (Seal)
Test: ELMA F. NEW."

"The above P. Fred Etzel acknowledged on June 20th, 1906, that he thoroughly understood the above contract and agreement, and that it truly represents his wishes.

J. WILSON LEAKIN."

On June 20, 1906, the $3,000.00 mentioned in Miss Etzel's agreement, was paid to the appellee, and the ground rents were conveyed by her to herself and the appellee in trust for the appellant; the appellee paid the appellant $1,000.00, and the appellant executed a release to his sister, and acknowledged, before J. Wilson Leakin, Esqr., that he thoroughly understood the above agreement, as stated in the memorandum written on the agreement by Mr. Leakin, and gave to the appellee a receipt as follows:

"BALTIMORE, MD., June 20, 1906.

Received of William Duncan, $1,000.00 in cash and a deed for three ground rents of $42.00 each, on the northwest side of Washington Avenue, being in full settlement, as per contract, in settling the case of mine against my sister, Julia Etzel, in the Circuit Court No. 2.

Witness my hand and Seal.      P. FRED ETZEL.   (Seal)
Test: ELMA F. NEW."

The testimony of the appellant and of Mr. Behrens is to the effect that they did not know that the case had been settled for the $3,000.00 and the ground rents; that the appellant did not know of the contents of the release he gave his

sister, which recited the terms of the settlement; that he did not read the release, and that it was not read to him, and that he signed the above agreement and receipt, and accepted the $1,000.00, believing that the settlement had been made for four thousand dollars, and that the appellee was receiving for his services one thousand dollars, which he had agreed to allow. If such were the facts of the case then the appellant was the victim of a most glaring and palpable fraud. Or if the facts were that there was no agreement as to the compensation to be allowed the appellee until the agreement of June 19, 1906, when the terms of the settlement with Miss Etzel had already been agreed upon, it would require the most convincing proof of the utmost good faith on the part of the appellee, and of full knowledge and entire freedom of action on the part of the appellant, before a Court of equity could give its sanction to such an allowance for the services rendered. It is stated in 1 *Am. & Eng. Ency. of Law,* 959, that: "The relation of attorney and client being *quasi* fiduciary, all transactions between them to be upheld must be *uberrima fides,* and to establish that such is the case rests with him who would uphold the transaction. The jealous care and scrutiny over such transactions extends to all gifts, conveyances, and contracts by the client, and all securities given by him pending the relation. The foundation of the rule is the influence arising from the relation; so long, therefore as the influence exists the rule of course applies." And in 4 *Cyc.* 960, it is said that, "owing the confidential and fiduciary relation between an attorney and his client and to the influence of the attorney over his client growing out of that relation, Courts of law, and especially of equity, scrutinize most closely all transactions between an attorney and his client. To sustain a transaction of advantage to himself with his client, the attorney has the burden of showing, not only that he used no undue influence, but that he gave his client all the information and advice which it would have been his duty to give if he himself had not been interested. and that the transaction was as beneficial to the client as it

would have been had the client dealt with a stranger." But no where has the rule been more clearly stated than in the case of *Merryman* v. *Euler,* 59 Md. 588, where JUDGE IRV-ING, referring to the facts in that case, said: "It is immaterial whether the appellee was drunk when the assignment was made or not; for it was abundantly clear that the relation of client and attorney existed; and, under such circum-stances, the law makes a presumption against the attorney and in favor of the client. In such case the *onus* is on the attorney to prove the entire *bona fides* and fairness of the transaction, which he has failed to establish to the satisfac-tion of the Court below or to us. * * * All the authorities con-cur that the highest degree of fairness and of good faith is required from an attorney towards his client, and all their dealings will be closely scrutinized, and no contract between them will be upheld where any undue consequences result to the attorney. * * * The attorney is supposed to have an as-cendancy over the client, because of his relation to him, and can easily impose on his credulity; therefore, transactions, which would be open to no objection where no such relation exists, will be held invalid as against a client."

The testimony of the appellant, however, is not supported except by the testimony of Mr. Behrens, who, it appears, first sued the appellee for a part of the fee he received on the ground that he was entitled to a further portion after having received from the appellee $500.00, and has stated that he now expects to receive a part of whatever the appellant re-covers from the appellee in this case, and whose attitude in the case does not therefore, entitle him to full credit. While the positive and direct statement of the appellee is that when the appellant and Mr. Behrens came to see him the first time to employ him, they agreed that he should receive for his services one-half of the amount he recovered for the appel-lant, and that when they came to him in June and informed him that the case could be settled for $4,000.00, he then reminded them of the agreement that he was entitled to re-ceive one-half and that they assented; that when the com-

promise with Miss Etzel had been accomplished, and he was making a final settlement with the appellant, the appellant said he thought as the case had been compromised he ought not to insist upon charging the one-half, and he agreed to take $500.00 less and the appellant was entirely satisfied; that the appellant had full knowledge of the terms of the settlement with Miss Etzel; that the release, the agreement and receipt were read to and by him, and that he acknowledged in the presence of Mr. Leakin that he fully understood the agreement and that it was in accordance with his wishes.

Mrs. Pierson, who was employed at the time of these transactions in the office of the appellee, testified that she heard the appellee remind the appellant and Mr. Behrens, on the day the authority to settle the case for $4,000.00 was signed, that he was entitled to one-half; that the release to Miss Etzel was read to the appellant by the appellee, and that the appellant then took it and read it himself; that the agreement signed by Miss Etzel was shown to the appellant and was also read to him by the appellee, and that she witnessed his signature to the agreement and to the receipt.

Mr. Leakin states that the appellant and appellee came to his office together, and that the appellee had the agreement signed by Miss Etzel and the agreement signed by the appellant; that the appellee read to the appellant, in his presence, the agreement signed by Miss Etzel, and that he, Mr. Leakin then read to him the other agreement, and that the appellant stated to him that he understood them, and that they were in accordance with his wishes, and that he, Mr. Leakin, then made the memorandum, referred to above, on the bottom of the agreement signed by the appellant.

In view of this testimony, and in view of the fact that the testimony was taken in open Court, thus affording the lower Court an opportunity to see the witnesses and to judge of the credit to which their evidence was entitled, we would not be justified in holding that any fraud or undue influence was practiced on the appellant, or that he did not agree in the

first instance to pay the appellee one-half of the amount re-covered.

So far as the record discloses, the appellee was a stranger to the appellant, and if, when he employed the appellee, he agreed, in the presence of the friends he had selected to assist him in his venture against his sister, to allow him one-half of the amount recovered, he has no claim upon a Court of Equity to relieve him of a contract deliberatedy made, and we must, therefore, affirm the order of the Court below.

> *Order affirmed, the appellant to pay the costs in this Court and in the Court below.*