[No. 21620. Department One. July 12, 1929.]

MAX HARDMAN, *Appellant*, v. CHARLES R. BROWN *et al.*, *Respondents*.[1]

*Max Hardman* and *Jeffrey Heiman*, for appellant.

*Poe, Falknor, Falknor & Emory*, for respondents Brown *et al.*

*Greene & Henry* for respondents Greene *et al.*

[1]Reported in 279 Pac. 91.

FULLERTON, J.—On February 24, 1914, one Joseph Levinson was engaged in the liquor business in the city of Seattle. He was indebted to various persons for liquors purchased by him, the aggregate sum of which was $30,479.82. On the date named, Levinson entered into an agreement with the respondent Charles R. Brown by which he appointed Brown trustee for the benefit of his creditors, and assigned to Brown his liquor business and the stock of liquors he then had on hand. He also made and delivered to Brown his promissory note for the total sum of his indebtedness. Brown took possession of the assigned property and afterwards sold it, dividing the net proceeds of the sale among the several creditors whose claims were included in the assignment and represented by the note. The property assigned did not pay any considerable part of the indebtedness, and subsequently a judgment was obtained against Levinson in favor of Brown, as trustee, for the sum of $29,950.68.

Among the creditors of Levinson, was the Stewart Distilling Company, of Philadelphia, Pennsylvania. Its claim amounted to $7,601.19, and it had employed a firm of attorneys at San Francisco, California, to enforce collection, and that firm in turn employed the law firm of Reed & Hardman, of Seattle, of which the present appellant was a member, to assist in the collection. On May 31, 1919, the Stewart Distilling Company sold and assigned the claim to D. H. Carstairs and J. H. Carstairs, a copartnership.

On June 27, 1919, Levinson was adjudged a bankrupt, and at a meeting of his creditors, held in the following month, the respondent William A. Greene was elected trustee in bankruptcy of his estate. The verified claims presented to the trustee by creditors of Levinson aggregated approximately $125,000, while

the property turned over to the trustee as the assets of the bankrupt was comparatively of insignificant value.

Certain enterprises had been conducted in Seattle, in which Levinson had had a part, which had proved profitable, and it was believed by the parties interested that Levinson had valuable interests therein, and that these interests could be uncovered and subjected to the payment of his debts. The trustee in bankruptcy was without sufficient funds to pay the costs of the litigation necessary to determine the interests of Levinson in the property, and it seems that a number of the creditors were adverse to advancing funds for that purpose. These, however, were willing to allow, as fees for the collection of the claims, a greater percentage than the usual and customary allowances for that purpose, and these agreed to allow, as such fees, fifty per cent of the amount collected.

The account of the distilling company was then owned by D. H. and J. H. Carstairs. Seemingly, no contract was entered into with them prior to the institution of the action as to the amount they should contribute towards its prosecution, but subsequent to that time, and before the actual trial of the action, such a contract was made by which they agreed to pay fifty per cent of the amount collected on their claim towards the expenses of collection. The litigation against Levinson was successful, and sufficient property was discovered and brought into the bankrupt estate to pay the costs of the litigation, the face of the claims against Levinson in full, and a considerable part of the accrued interest on the claims. Subsequent to the institution of the action against Levinson, and subsequent to the agreement of the Carstairs to pay for the cost of collection fifty per cent of the amount collected, but prior to the time of the judgment against Levinson, the Car-

stairs assigned all of their right, title and interest in their claim to Hardman, the appellant in the present action.

The assignment was in writing, and, while it recited the original consideration for the claim, and the prior assignment to the Carstairs from the original holder, it made no mention of the agreement between them and Brown as to the fees to be paid for the collection of the claim. On the distribution of the fund, the appellant was paid fifty per cent of the claim. He contended that he was entitled to payment in full, and commenced the present action to recover the difference between the amount paid and the total of the claim. The trial court denied him any relief, and the appeal before us is from the judgment evidencing the conclusion of the court.

The appellant has made many assignments of error, and extensive briefs have been filed discussing the various errors assigned, but we feel it unnecessary to notice the assignments at length. The appellant moved to strike one of the affirmative defenses set up by the respondents in their answer to the complaint, which motion the trial court overruled. It also overruled a demurrer interposed to the same defense. But we find no error in these rulings. The answer contained the substance of a good defense, and the objection to it is want of technical precision. But the court treated it as sufficient, and allowed the parties to introduce all the evidence each of them desired on the question it involved. Under our practice, the pleading will be tested by the proofs, and considered amended to conform therewith.

A second objection is that the court denied the appellant the right to inspect the books of account kept by one of the respondents. But the books were the private books of account of the particular respondent, and

contained many entries not pertaining to the particular matter in question. The respondent tendered, and the court allowed, an inspection of all of the entries therein relating to the matter on trial, and we cannot conclude that the appellant was entitled to more.

The appellant in his complaint charged a conspiracy on the part of the respondents to defraud the appellant, and much evidence was introduced thought to substantiate the charge. But, while the evidence is discussed at length in the arguments, we do not feel required to enter upon its discussion here. To do so would be but to vindicate a conclusion reached from a study of the evidence, and would serve no useful purpose as a precedent. The trial court found against the contention of the appellant, and with that finding we concur.

The appellant attacks the validity of the agreement between Brown and D. H. and J. H. Carstairs. This agreement was in the form of telegrams and letters passing between Brown and the Carstairs. The first was a telegram under date of December, 1921, from Brown to the distilling company, reading as follows:

"Stewart Distilling Company
"c/o Edward Brooks, Jr.
"Room 301
"1418 Walnut St.,
"Philadelphia, Pennsylvania.

"When Levinson litigation started agreed to pay attorneys third of recovery. Attorneys have advanced considerable money and work is harder than they anticipated they insist receiving fee fifty per cent amount recovered. Much additional hard work must be done immediately more money advanced. Case tried soon. Think their request reasonable. Wire consent.
                    "Charles R. Brown."

To this telegram the Carstairs answered by letter dated on the same day, reading:

"Mr. Charles R. Brown,
"c/o Washington Chocolate Co.,
"Seattle, Washington.
"Dear Sir:
"Your wire of December 1 addressed to the Stewart Distilling Company received this morning. Our counsel Mr. Edward Brooks, Jr., is in the south. He is the only person at present who is familiar with the Levinson case. We are sending him by this mail copy of your telegram asking him to communicate with you direct. He will be in the south for more than a month.
"Yours very truly,
"D. H. & J. H. Carstairs, A. C. P."

On December 8, 1921, Brown again telegraphed the Carstairs as follows:

"D. H. & J. H. Carstairs,
"Bellevue Court Bldg.,
"Walnut St.,
"Philadelphia, Pennsylvania.
"Only word received Levinson matter is your letter. Imperative we have final decision by wire from you or your attorney. Almost every creditor but yourselves accepted proposition. Strongly recommended.
"Charles R. Brown."

Under date of December 9, 1921, the Carstairs replied by telegram:

"Charles R. Brown,
"Washington Chocolate Co.,
"Seattle, Washington.
"Answering your wire of December second we consent to fifty per cent amount recovered by attorneys in Levinson matter.      D. H. & J. H. Carstairs."

This telegram they confirmed by letter of the same date.

It is at once apparent, of course, that the telegrams and letters are sufficient on their face to constitute a

contract to pay to the attorneys representing the creditors fifty per cent of the amount collected on the claim for the services to be rendered by them in its collection. Nor do we understand that the appellant contends to the contrary. His contention is, as we gather from his argument, that the contract was entered into by the Carstairs through a misunderstanding of the situation; that they understood that the fifty per cent fee was to be paid to the attorneys whom they had originally employed to collect the claims, not the attorneys employed by Brown and others of the creditors, and that there was thus no contract because there was no meeting of minds. But we cannot accept this view of the record. In truth, it seems to us that the contention hardly admits of serious argument. The Carstairs fully understood the situation. They knew that all efforts theretofore made to collect the claims had proved unsuccessful. They knew that the trustee in bankruptcy had found no visible assets of Levinson of more than nominal value, and knew that there was no possibility of a collection unless the action instituted by him should prove successful. They possibly did not know who the attorneys were that had been employed to prosecute the action, but this is not a material circumstance. Their promise was to pay the attorneys actually employed, and they made the promise without inquiry as to who they were. Plainly, after the services had been performed, neither they nor their subsequent assignee should be permitted to escape the liability arising from the promise by saying that they were not aware of the actual situation, or that they believed one firm of attorneys had been employed instead of another.

The attorneys employed the respondent J. W. Bullock to assist them in procuring evidence necessary to support the action, and contracted to pay him,

as a consideration for his services, a considerable fee out of their part of the recovery. At the conclusion of the case, they paid him in accordance with their contract. The appellant contends, if we have correctly gathered his meaning, that the compensation paid was grossly in excess of the value of the services rendered by this respondent, and that he should be compelled to return it into the bankruptcy estate for distribution among the creditors of such estate. But we cannot follow the line of reasoning by which this conclusion is sought to be established. The creditors, including the appellant, received all that was due them under the terms of their original contracts, and how a bad or inconsiderate bargain made by the attorneys with reference to the fees they were to receive could inure to the benefit of the creditors, is not at once apparent. It could only be so on the theory that their contract with the creditors was so far extortionate as to amount to a fraud, and that the contract with Bullock was made in furtherance of the fraud. But in support of this theory we find nothing in the record. The contract made between the creditors and the attorneys was one permissible under the laws of this state, whatever may be the rule elsewhere, and it would seem that the mere statement of the facts is sufficient to show that it was not unconscionable.

Exceptions were taken to the findings of fact made by the court, but these do not require special consideration. The judgment was right under the record as a whole, and this court, which tries the case *de novo*, is not required to inquire further.

The judgment is affirmed.

TOLMAN, HOLCOMB, and BEALS, JJ., concur.