[Civ. No. 14607. First Dist., Div. Two. Apr. 26, 1951.]

Estate of RAYMOND THEODORE RAPHAEL, Deceased. BERTHA RADO RAPHAEL, Appellant, v. RAY M. GREENE et al., Respondents.

Holbrook & Tarr, W. Sumner Holbrook, Jr., Clyde P. Harrell, Jr., Francis H. O'Neill and Edmund Nelson for Appellant.

Ray M. Greene and John Barton O'Brien, in pro. per., and Herbert Chamberlin for Respondents.

DOOLING, J.—Bertha Rado Raphael, appellant, is the widow of Raymond Theodore Raphael who died intestate. The decedent's estate consisted entirely of property inherited from his parents and the increase thereof. His legal heirs were a brother and his widow, the appellant. The widow waived her right to administer and the brother was appointed administrator.

The widow being dissatisfied both with the amount of the estate as accounted for and the administrator's claim that it was all the separate property of the decedent employed respondent Greene to represent her. She assigned Greene $1,000 of her interest in the estate as a retainer fee. Greene testified that at that time he told appellant that the total fee to be charged would have to be agreed upon later after he found out how much work was involved.

The administrator filed an inventory of property with an appraised value of $104,000, all of which was described as separate property. Greene proposed to appellant that respondent O'Brien be associated with him and that they would handle her case on a contingent fee basis of 50 per cent of her share of any property not inventoried which they succeeded in having included in the estate and 50 per cent of the additional one-half of the inventoried property which she would receive if it was established that it was community and not separate property. A contract so providing was drawn by respondents and executed.

Thereafter respondents succeeded in obtaining an adjudication from the probate court that all of the inventoried property was community property and this adjudication was affirmed on appeal. (*Estate of Raphael*, 91 Cal.App.2d 931 [206 P.2d 391].) After this adjudication and pending the appeal appellant herein discharged respondents and substituted her present counsel in their stead.

Thereafter respondents, proceeding under Probate Code, section 1020.1, moved the probate court for an order approving their contingent fee contract and allowing them the compensation therein provided for. After a trial the probate

court found that the contingent fee agreement was "in all respects and particulars just, fair and valid" and "was not obtained by duress, fraud or undue influence"; that appellant had without cause discharged respondents as her attorneys; that the reasonable value of their services to the time of their discharge was $25,000; and determined that respondents were entitled to have $25,000 distributed to them from the assets of the estate with interest at 7 per cent from the date of the order, December 6, 1949. From this order, and from orders denying her motion for new trial and motion to vacate the order of December 6, 1949, appeals have been taken.

Appellant claims on appeal that the findings that the contingent fee contract was not obtained by fraud, duress and undue influence; that the contingent fee agreed upon was equitable and reasonable; and that respondents were discharged without cause, are all contrary to the evidence.

■ In weighing these claims we must view the evidence in the most favorable light to support the probate court's findings drawing every reasonable inference in their favor which the evidence will support. Probate Code, section 1020.1, lays the duty of determining whether "the fees, charges or consideration paid by any . . . heir is grossly unreasonable" and whether "any such assignment, transfer (or) agreement . . . was obtained by duress, fraud or undue influence" upon the probate judge and we cannot substitute our judgment for his on the weight and effect of the evidence. (*Estate of Mc-Pherson*, 94 Cal.App.2d 906 [212 P.2d 41].)

■ Respondent Greene testified that the contingent fee contract was several times explained to appellant before she signed it. "I told her that under the inventory . . . all of the estate was listed as the separate property of her husband; that from a legal standpoint one-half of the estate went to her brother-in-law and the other half went to her; that our job would be to prove . . . that all of the estate was community property . . . that all of the community property would go to the surviving spouse. . . . She was certain of recovering one-half of $104,000. That would be $52,000. The contract was explained to her that everything over . . . $52,000 would be one-half to her. If she got nothing but the $52,000 all she would owe . . . would be the $1,000, the retainer fee. . . . She expressed herself as being very pleased, because she had no money to advance for attorneys' fees and costs. If she lost she would owe us nothing but the thousand. If she won she would be able to pay the 50% increase."

Appellant flatly contradicted this testimony, her version being that she signed the contract without reading it or understanding its terms on the representation of respondents that it was a paper respondents wanted her to sign for their files. The probate judge chose to believe respondents and disbelieve appellant. Conceding that the contract was burdened with a presumption of overreaching, that presumption is rebuttable (*Estate of Phillipi,* 76 Cal.App.2d 100 [172 P.2d 377]), and the trial court's finding that there was no fraud, duress or undue influence is amply supported.

The finding that the fee provided for was equitable and reasonable is likewise supported. A contingent fee contract, since it involves a gamble on the result, may properly provide for a larger compensation that would otherwise be reasonable. (*Goldstone* v. *State Bar of California,* 214 Cal. 490, 498 [6 P.2d 513].) Contingent fees of 50 per cent have been upheld in this state and by many other courts. (*Hoffman* v. *Vallejo,* 45 Cal. 564; *Swanson* v. *Hempstead,* 64 Cal.App.2d 681 [149 P.2d 404]; *Hardman* v. *Brown,* 153 Wash. 85 [279 P. 91]; *Savic* v. *Kramlich,* 52 Idaho 156 [12 P.2d 260]; *In re Fitzsimons,* 174 N.Y. 15 [66 N.E. 554]; *Morehouse* v. *Brooklyn Heights R. Co.,* 123 App.Div. 680 [108 N.Y.Supp. 152]; affirmed 195 N.Y. 537 [88 N.E. 1126]; *In re Merrill's Estate,* 165 Misc. 295 [300 N.Y.Supp. 1142]; *In re Levine's Estate,* 154 Misc. 700 [278 N.Y.Supp. 36]; *In re Carney,* 93 Misc. 600 [158 N.Y.Supp. 585]; *Friedman* v. *Mindlin,* 91 Misc. 473 [155 N.Y.Supp. 295]; *Moyers* v. *City of Memphis,* 135 Tenn. 263 [186 S.W. 105, Ann.Cas. 1918C 854]; *Etzel* v. *Duncan,* 112 Md. 346 [76 A. 493]; *Dreiband* v. *Candler,* 166 Mich. 49 [131 N.W. 129]; *Elk Valley Coal Mining Co.* v. *Willis & Meredith,* 149 Ky. 449 [149 S.W. 894]; *Lipscomb* v. *Adams,* 193 Mo. 530 [91 S.W. 1046, 112 Am.St.Rep. 500].)

Research, investigation and consultations of many weeks were involved and the outcome hinged on persuading the trial court that admittedly separate property had been transmuted to community property by oral agreement. (*Estate of Raphael, supra,* 91 Cal.App.2d 931.) The case had to be won in the trial court since the result hung on conflicting testimony and inferences. The same judge heard both matters. He was in the best possible position to appraise the quality of the services performed and the extent of the risk involved in staking the fee on the hazard of success. To his mind the gamble was fraught with uncertainty as was indicated by the following remarks made by him during the course of the

hearing: "It was a close question. It was one of those questions that if I had been reversed, I would not have been surprised."

Hindsight leads counsel for appellant to minimize the extent and value of the services, but if the trial judge had decided the "close question" the other way they would doubtless be arguing as strenuously that respondents having lost must accept the consequences of having wagered their fee on the contingency of success.

Counsel for appellant suggest several reasons why the finding that the discharge of respondents was without cause is not supported by the evidence. Respondents demanded and received from appellant three payments of $100 each and requested others. Respondent Greene testified that he performed other legal services for appellant outside of the estate and that these payments were to compensate for those services. Difficulties arose, when appellant insisted on associating her present counsel, about the fee which they were to receive and over the advancement for costs incurred. There was testimony that respondents threatened to withdraw from the case unless an additional payment or some new arrangement was made. Greene testified: "That is absolutely erroneous. When she saddled me with these other personal matters, the two pieces of litigation, I told her if she wanted me, or expected me not to make any additional charges for those services, that she would have to pay something on the thousand dollar retainer. . . . I told her if she wanted to hire Mr. Harrell that it was perfectly all right, but that she would have to make arrangements for his fees and costs. . . . I would have been glad to have Mr. Harrell's firm, but we never got together on the fees, costs and expenses."

The probate judge evidently accepted this version, and that is an end to the question on appeal.

Finally there was testimony that Greene called his client "psychopathic" and "screwy." Greene's version is that appellant wrongfully accused him of entering her safe deposit box and taking some of her papers. He admits some heated language as a result. The trial judge was in the best position to assay the testimony and appraise the conduct of the parties. A reading of the entire transcript satisfies us that the findings in the particulars discussed find ample evidentiary support.

Under those findings the order fixing the fee at $25,000 (less than the contingent contract calls for) is immune from attack on appeal. An attorney employed on a contingent fee basis, discharged without cause, may recover the full

compensation called for by his contract. (*Denio* v. *City of Huntington Beach*, 22 Cal.2d 580, 591 [140 P.2d 392, 149 A.L.R. 320] ; *Salopek* v. *Schoemann*, 20 Cal.2d 150, 153 [124 P.2d 21] ; *Zurich Gen. Acc. & L. Ins. Co.* v. *Kinsler*, 12 Cal.2d 98, 100-101 [81 P.2d 913].)

Appellant also attacks the finding that the services performed to the date of discharge were of the reasonable value of $25,000 and points out that the theory of recovery under the contract is inconsistent with a recovery of reasonable value. We find no necessity of inquiring into these questions for the reason that the order is fully supported by the findings which resulted in the approval of the contingent fee contract. Under those findings respondents were entitled to $26,000, 50 per cent of $52,000. The appellant is in no position to complain of an error of the court which resulted only to the disadvantage of respondents.

The contract calls for the payment of the contingent fee "forthwith upon its receipt at the time of the distribution of the estate." We can find no justification for the allowance of interest before distribution.

The order approving the contingent fee contract is modified by striking therefrom the provision for interest and as so modified it is affirmed. The order refusing to vacate is affirmed. The appeal from the order denying a new trial is dismissed. Respondents will recover costs on appeal.

Schottky, J. pro tem., concurred.

A petition for a rehearing was denied May 26, 1951, and appellant's petition for a hearing by the Supreme Court was denied June 18, 1951.