[L. A. No. 28301. In Bank. Jan. 25, 1966.]

Estate of SUE B. KERR, Deceased. ALMARIO M. AVILES, as Executor, etc., Plaintiff and Appellant, v. LUCE, FORWARD, HAMILTON & SCRIPPS, Defendants and Respondents.

David W. Hardin for Plaintiff and Appellant.

Luce, Forward, Hamilton & Scripps, Michael Ibs Gonzalez and Bruce A. Berry for Defendants and Respondents.

BURKE, J.—This is an appeal from an order (1) fixing attorneys fees under a contingent fee agreement executed by the beneficiary named in a document admitted to probate as the last will and testament of decedent, Mrs. Sue B. Kerr, and (2) giving the attorneys a lien on the assets of the estate to secure payment of such fees. We have concluded that the trial court correctly construed and applied the agreement, and that its order should be affirmed.

The parties agree that in August 1961 decedent made a

will, apparently executing two duplicate originals thereof, in which she provided in pertinent part: "I do hereby designate ALMARIO M. AVILES as my sole heir and beneficiary"; that Aviles become her legal guardian "if and when necessary"; and appointing him as executor. After her death the public administrator found one of the documents, which had been torn across several times and then pasted together with trading stamps; the other was in the hands of Aviles, who before Mrs. Kerr's death had moved from his former home in San Diego (in the vicinity of Mrs. Kerr's home) to the San Mateo area. Aviles was not related to Mrs. Kerr.

The public administrator applied for letters of administration of Mrs. Kerr's estate. Aviles consulted with a firm of attorneys in San Mateo, who in turn sought the assistance of a San Diego firm, respondents on this appeal. In November 1962 Aviles and the two firms of attorneys entered into a written "Attorneys' Retainer Agreement," the pertinent portions of which are set forth in the margin.[1]

Thereafter the San Diego firm was successful in securing the admission of decedent's will to probate and the appointment of Aviles as executor. In so doing, the work they performed included extensive interviewing of witnesses to the will, the procuring of their affidavits, and the preparation of petition for probate of will, order admitting the will to probate, and letters testamentary. The attorneys were of the view that Aviles, by reason of being named in the will "as my sole heir and beneficiary," would be entitled to distribution of all the property of the estate, even though the will did not expressly so provide. The same firm, as attorneys of record for the executor, Aviles, also prepared the notice to

---

[1] "Client [Aviles] hereby retains Attorneys to represent him . . . in the matter of proving the Will of SUE B. KERR in the County of . . . San Diego . . . , and empowers them to effect a compromise of said matter or contest the actions of the public administrator or other claimants to the property of said deceased SUE B. KERR in said probate proceedings or other actions, as may be necessary in their judgment and agrees to pay them for their services a guaranteed fee of Two Hundred Dollars ($200.00) to defray their costs in connection with the prosecution of the probate of said Will and other actions, if any, and to pay said Attorneys one-half (½) of the recovery in said estate proceedings by reason of any compromise or proof of the said Will and the admission thereof and the procurement of the distribution of the assets of said decedent, SUE B. KERR. . . .

"Attorneys are hereby given a lien on the said claim or any sum recovered by way of settlement, for . . . their fee; and . . . may retain . . . their share out of the amount finally collected by suit or settlement, or judgment in full, *of* their services. . . ." (Italics added.)

creditors, order appointing inheritance tax appraiser, notice of sale of real property, and petition to borrow money to encumber real property of the estate.

In August 1964 Aviles noticed a motion for substitution of attorneys and to fix fees for "work done to this time." Following a hearing the court made its order of substitution and decision relative to the attorneys' fees, in which it was found among other things that respondent attorneys "have fully performed all of the conditions on their part to be performed under said [written attorneys' retainer] agreement; [and are] entitled to a full one-half of the net recovery of . . . Aviles . . . [from the estate of Mrs. Kerr] . . . ; that said attorneys are further entitled to a lien against the assets of said estate as security for the payment of said share; that the amount of said share to which said attorneys are entitled cannot be ascertained until creditors claims and costs of administration have been paid" following sale of certain real property which comprised the principal asset of the estate; that "said attorneys have waived all claims for fees as counsel for said Executor." Accordingly, the order fixed the fees of the attorneys under the retainer agreement at "one-half of the net recovery" of Aviles from the Kerr estate "after deducting all the court costs, creditors claims and costs of administration," and gave them a lien on estate assets to secure payment of the fees. This appeal by Aviles followed.

▆▆▆ Aviles contends that the award to respondents of one-half the net recovery from the estate violates the provisions of sections 901 and 910 of the Probate Code, which limit the compensation of executors and their attorneys, and of section 903, which declares that contracts for a higher compensation shall be void. (See *Estate of Hite* (1909) 155 Cal. 448, 452-456 [101 P. 448] ; *Estate of Higgins* (1910) 158 Cal. 355 [111 P. 8] ; *Firebaugh* v. *Burbank* (1898) 121 Cal. 186, 191-192 [53 P. 560].)

▆▆▆ Although a contingent fee contract for services rendered as attorney for an executor is invalid (see *Estate of Hastings* (1952) 108 Cal.App.2d 713 [239 P.2d 684] ), contingent attorney fee contracts with an heir, devisee or legatee to secure the probate of a document as a will or to protect or advance his claims to share in an estate have been upheld as proper. (See *Houge* v. *Ford* (1955) 44 Cal.2d 706 [285 P.2d 257] ; *Estate of Raphael* (1951) 103 Cal.App.2d 792, 796-798 [230 P.2d 436] ; see also *Estate of Cazaurang* (1934) 1

Cal.2d 712, 717 [3] [36 P.2d 1069]; *Estate of Cazaurang* (1946) 75 Cal.App.2d 217 [170 P.2d 694].)

 The trial court is correct in its implied conclusion that the contract now before us falls within the latter category, and is valid. As noted (fn. 1, *ante*), the contract specifies that Aviles is to pay the attorneys "for their services a guaranteed fee" of $200 to "defray their costs in connection with the prosecution of the probate of said Will and other actions, if any, and to" additionally pay them one-half "of the recovery in said estate proceedings by reason of any compromise or proof of the said Will and the admission thereof and the procurement of the distribution of the assets. . . ." This language does not suggest that the attorneys would also act as counsel for the executor, or that the fees called for in the contract were intended to cover legal services rendered in any such capacity. If for any reason Aviles had not acted as executor, the attorneys' contingent fee contract with him would not have obligated them to render services as counsel for any other personal representative the court might have appointed; their obligation to Aviles under the contract was to procure probate of the will and thereafter protect his interests up through the point of distribution to him of the estate assets.

Also, the waiver by the attorneys of all claims for fees as counsel for the executor removes any possibility that they might receive a contingent fee for services rendered in that capacity. Additionally, since any fee otherwise payable to counsel for the executor would have been deducted as a cost of administration (pursuant to the court's order), the waiver actually operated to increase the expected net recovery by Aviles.

 Aviles' suggestion that the court did not make a proper inquiry or order pursuant to the requirements of section 1020.1 of the Probate Code[2] is likewise without merit.

[2]Section 1020.1 in pertinent part: "The court before making distribution of any property of a decedent . . . to any person other than an heir, devisee, or legatee pursuant to any agreement . . . of any heir, devisee or legatee may on the motion of any person interested in the estate . . . or on its own motion inquire into the consideration for such . . . agreement . . . and into the amount of any fees . . . agreed to be paid by the heir, devisee or legatee and into the circumstances surrounding the execution of such . . . agreement, . . . and if it finds that the fees . . . or consideration paid by any such heir, devisee or legatee is grossly unreasonable . . . it may refuse to make distribution pursuant thereto except upon such terms as it deems just and equitable. . . ."

In the first place, the inquiry contemplated by that section appears to be permissive rather than mandatory. Next, Aviles does not claim that as a "person interested in the estate" he moved the court to inquire into the attorney fee contract under the provisions of section 1020.1, although it would have been proper for him to apply for such review. Finally, the record shows that respondent attorneys presented evidence of extensive service rendered in securing admission of the will to probate, which it must be presumed entered into the court's determination. (Cf. *Estate of Raphael* (1951) *supra,* 103 Cal.App.2d 792, 794-795.)

 The court did not err in ordering that the attorneys have a lien on the estate assets to secure payment of their fees. Their contract with Aviles specifically gives them a lien on his claim to the estate or any "sum recovered by way of settlement." No impropriety is shown. (See *Gostin* v. *State Farm Ins. Co.* (1964) 224 Cal.App.2d 319, 323-325 [2-10] [36 Cal.Rptr. 596]; *Estate of Cazaurang* (1946) *supra,* 75 Cal. App.2d 217, 219.)

The order appealed from is affirmed.

Traynor, C. J., McComb, J., Peters J., Tobriner, J., Peek, J., and Mosk, J., concurred.

