16 Cal.App.3d 726 (1971)
94 Cal. Rptr. 856
Estate of ATA MUHAMMAD, Deceased.
BELLI, ASHE, GERRY, ELLISON & CHOULOS et al., Petitioners and Respondents,
v.
BANK OF AMERICA, as Trustee, etc., Objector and Appellant.
Docket No. 11922.
Court of Appeals of California, Third District.
April 16, 1971.
*728 COUNSEL
Geis & MacFarland and Roy G. MacFarland for Objector and Appellant.
Belli, Ashe, Ellison, Choulos, Cone & Harper, Belli, Ashe, Ellison, Choulos & Lieff, Frederick A. Cone and Vasilios B. Choulos for Petitioners and Respondents.
OPINION
JANES, J.
Appellant bank is testamentary trustee under the last will and testament of Ata Muhammad, who died on January 6, 1961. The appeal is from an order made in the estate proceeding on July 18, 1967, fixing attorneys' fees and directing the executors to pay those fees to respondent attorneys for services performed by them on behalf of Yasmin Muhammad, the decedent's minor daughter, in a contest of decedent's will.
The will was admitted to probate on February 3, 1961. After the payment of taxes, approved claims, and the expenses of administration, the will *729 left one-fourth of the residuary estate (including mineral rights) in trust for Yasmin's support, education, and welfare (hereinafter, "Trust `A'"). The will directed appellant bank, as trustee, to apply to those trust purposes so much of the trust property (corpus, income, and revenue therefrom) as the trustee in its sole and absolute discretion deemed best.[1] The will gave the other three-fourths of the residuary estate (including mineral rights) to a different trust for the benefit of the decedent's brother and four nephews (hereinafter, "Trust `B'"). The testator authorized the trustee of Trust "A" to terminate the trust for any reason and at any time, and to thereupon transfer the remaining assets of Trust "A" to Trust "B." In the event of the prior termination of Trust "B," the will specified that the residual assets of Trust "A" were to be transferred to the heirs of the testator's brother and nephews. If Yasmin died while Trust "B" was still in existence, the will directed that the remaining property of Trust "A" was to be turned over to Trust "B."
On June 20, 1961, through her mother as guardian ad litem, Yasmin filed a will contest wherein she sought an order revoking the earlier probate. The minor was represented by respondent attorneys. The mother was appointed guardian of the minor's estate in 1962; on February 10, 1964, respondent Harper was ordered substituted as such guardian.
On January 16, 1964 (25 days, we note, before Harper's appointment), the will contest was compromised by a written agreement signed on Yasmin's behalf by Harper as the purported guardian of her estate, by the trustees of Trust "A" and Trust "B," by the beneficiaries of Trust "B," and by Yasmin's mother, individually.[2] The agreement stipulated to a dismissal of the contest.
Under the compromise, just as under the will, Trust "A" was to receive one-fourth of the residuary estate (including mineral rights). In contrast to the will, however, the compromise provided that the trustee of Trust "A" had discretion only in regard to the amount of trust corpus that would be applied for Yasmin's support, education, and welfare; the compromise specified that the trustee was to pay all trust income and revenue to Yasmin's mother or to any other person or entity appointed as the child's *730 guardian, and that the payee was to use such income and revenue for the minor's support, education, and welfare.
The compromise also stated that its signatories had "deleted" those portions of the will which authorized the trustee of Trust "A" to terminate that trust and which, under certain contingencies, required the assets of Trust "A" to be transferred either to Trust "B" or to the heirs of the Trust "B" beneficiaries. Instead, the compromise provided that the trustee of Trust "A" was to deliver one-third of the Trust "A" residue to Yasmin when she reached the age of 21, one-half of the remaining trust estate to her when she became 25, and the balance of the trust estate to her at age 35, or to her heirs if she died sooner.
Respondent attorneys represented Yasmin during the negotiations leading to the compromise, but the settlement agreement made no mention of attorneys' fees.
Subsequent to the signing of the compromise by the parties named therein, it was executed by the executors on behalf of the estate.[3] Upon petition of the executors, the court approved the compromise on March 6, 1964. Its order of that date recites that "all interested persons" had "joined in the petition"  a statement which, together with later portions of the record, shows that the compromise was still supported by respondent Harper once he became guardian.
On February 6, 1967, by a decree of preliminary distribution, the court ordered distributed to appellant bank, as testamentary trustee of Trust "A," the sum of $70,884.24 and an undivided one-fourth interest in described mineral rights. The decree stated that the distribution was pursuant to the will "as modified by" the compromise. An additional $42,442.13 was retained by the executors and was not included in the preliminary distribution. The $42,442.13 was part of the total distributive share of Trust "A" (that total being $113,326.37 plus one-fourth of the mineral rights).
On April 28, 1967, respondent attorneys and respondent Harper, in his capacity as guardian, petitioned the court for its approval of a contingent fee contract entered into on Yasmin's behalf by her mother, acting as "parent and natural guardian," and by three of the five respondent attorneys. The contract was dated the day after the testator's death. It provided that the three attorneys would represent the minor's interest in the decedent's estate and that they would be paid "33 1/3% of any moneys *731 or property, real, personal or any other valuable consideration, which is set aside for or awarded to ... YASMIN MUHAMMAD, a minor, by way of Decree of Distribution, by Court Order, or by compromise." The petition asked for attorneys' fees of $37,775.34 (33 1/3 percent of $113,326.37), or, in the alternative, that the court determine a reasonable fee. It also requested the court to order the executors to pay the fee directly to the five attorneys "out of the distributive share of YASMIN MUHAMMAD, a minor...."
On July 18, 1967, over the objections of appellant bank, the court made the following order: "The Court finds that the material allegations of the Petition [for attorneys' fees] are true, hereby affirms and ratifies the Attorneys' [contingent fee] Contract and further finds that the sum of $28,331.59, being equal to twenty-five percent (25%) of the distributive share of YASMIN MUHAMMAD, a Minor, is a fair and reasonable sum to be awarded to Petitioners as and for attorneys' fees. The Court, therefore, further directs and orders that the Executors of the Estate of ATA MUHAMMMAD, deceased, pay directly to Petitioners BELLI, ASHE, GERRY & ELLISON and VASILIOS B. CHOULOS the said sum of $28,331.59." In a memorandum opinion which announced its intended ruling, the court correctly stated that there was "no case law directly in point." It concluded, however, that "the equities require the allowance of a reasonable fee."
(1a) Appellant bank contends that the order of July 18, 1967, was in excess of the court's jurisdiction since its effect was to require the executors to pay respondent attorneys from that part of the distributive share of the trust[4] which the executors still retained. The contention must be sustained.
(2) The superior court sitting in probate has only those powers which are granted by statute and such incidental powers, legal and equitable, as enable it to exercise the powers granted. (Conservatorship of Harvey (1970) 3 Cal.3d 646, 650 [91 Cal. Rptr. 510, 477 P.2d 742]; Estate of Bissinger (1964) 60 Cal.2d 756, 764 [36 Cal. Rptr. 450, 388 P.2d 682, 19 A.L.R.3d 506]; Estate of Schloss (1961) 56 Cal.2d 248, 253 [14 Cal. Rptr. 643, 363 P.2d 875]; Neubrand v. Superior Court (1970) 9 Cal. App.3d 311, 318-319 [88 Cal. Rptr. 586].) (3) Although no statute empowers the court  in so many words  to approve or disapprove "compromises *732 of will contests," it has been held that such authority is within the intendment of Probate Code section 1020.1[5] (Estate of Peterson (1968) 259 Cal. App.2d 492, 505-506 [66 Cal. Rptr. 629]; cf., Estate of Freeman (1965) 238 Cal. App.2d 486 [48 Cal. Rptr. 1]); and elsewhere it has been assumed that the same power is granted by section 718.5[6] (Estate of Green (1955) 138 Cal. App.2d 211, 213 [292 P.2d 651]; but see, 1 Condee, Cal. Probate Court Practice (2d ed. 1964), § 382, pp. 286-287). Neither of those sections, however, is authority for the order concerning attorneys' fees which appellant here challenges.
Section 718.5 is silent about attorney's fees. Section 1020.1, on the other hand, permits the court, in a proper case, to secure the payment of the attorney's fees of an "heir, devisee or legatee" by imposing a lien on his interest in the estate, and authorizes such payment to be made through the decree of distribution. (See, e.g., Estate of Kerr (1966) 63 Cal.2d 875 [48 Cal. Rptr. 707, 409 P.2d 931]; Estate of Cazaurang (1946) 75 Cal. App.2d 217 [170 P.2d 694].) (4) For some purposes under the Probate Code, the beneficiary of a testamentary trust is deemed to be an heir, devisee, or legatee. (Estate of Loring (1946) 29 Cal.2d 423, 430-431 [175 P.2d 524].) But there are cogent reasons why such beneficiary cannot subject trust assets held by the executor to any effective "assignment, transfer, agreement, request or instructions" within the scope of section 1020.1.
(5) "Except as expressly provided by law, the probate court has no jurisdiction to distribute a decedent's estate except to heirs, devisees, or *733 legatees." (Estate of Osgood (1942) 52 Cal. App.2d 293, 297 [126 P.2d 6].) "A testamentary trustee is a legatee and devisee under the will...." (Estate of Bixby (1961) 55 Cal.2d 819, 826 [13 Cal. Rptr. 411, 362 P.2d 43]; see also, Estate of Wellings (1923) 192 Cal. 506, 510 [221 P. 628].) "If the will creates an express trust, the legal title of the trustee and the equitable title of the beneficiary vest as of the date of death, even though the trust estate is residuary in character." (Ludwicki v. Guerin (1961) 57 Cal.2d 127, 131-132 [17 Cal. Rptr. 823, 367 P.2d 415]; see also, Prob. Code, §§ 28, 300.) The decree of distribution operates merely to confirm such title in the trustee. (Estate of Lefranc (1952) 38 Cal.2d 289, 297 [239 P.2d 617]; Estate of Baird (1955) 135 Cal. App.2d 333, 341 [287 P.2d 365].) "It may be taken as settled by the decisions in this state that the beneficiary of a trust takes no estate in the property itself and that title vests in the trustee with the right in the beneficiary to enforce performance of the trust...." (Estate of Troy (1931) 214 Cal. 53, 56 [3 P.2d 930] (italics ours); see also, Estate of Baird, supra.)
In the case at bench, the court was authorized under section 1020.1 to affirm the contingent fee contract and, at the same time, in its discretion, to reduce the percentage arrangement to the amount it deemed to be a reasonable fee. (See, Estate of Browne (1969) 2 Cal. App.3d 406 [82 Cal. Rptr. 705]; Estate of Cazaurang, supra, 75 Cal. App.2d at p. 224.) (6) However, since the minor beneficiary had no estate in the trust property, no "assignment, transfer, agreement, request or instructions" on her behalf could entitle her attorneys to any portion of those assets. "The general rule is that the creditor of a beneficiary under a trust has no more rights and can secure no greater benefits from a trust than the beneficiary himself [citations]." (DiMaria v. Bank of California (1965) 237 Cal. App.2d 254, 257 [46 Cal. Rptr. 924].)
(7a) Respondents nevertheless urge that the court's order of July 18, 1967, should be upheld as an exercise of its authority to award attorney's fees under Probate Code sections 1509[7] and 1510.[8] Their argument is without merit.
*734 Section 1509 is inapplicable because it does not refer to the source from which attorney's fees are to be paid, and because, if the case before us be deemed one where no fee contract was approved by the court (since it reduced the percentage), the statute has no force unless "a judgment is recovered by or on behalf of a minor...." (Italics ours.) No judgment was recovered by or on behalf of Yasmin. (See also, § 1511.)[9]
Section 1510 is likewise inapplicable for several reasons. First, the *735 executors in the case at bench cannot be deemed, within the meaning of that section, "the payer[s] of any money to be paid for the benefit of such [minor] person...." (Italics ours.) The executors are mere stakeholders of the estate, which they are to deliver to the persons designated by the court. (Estate of Carr (1917) 175 Cal. 387, 389 [165 P. 958]; cf., Estate of Karban (1953) 118 Cal. App.2d 240, 245 [257 P.2d 649].) "The probate court or judge is the guardian of estates of deceased persons and all proceedings are under the direction of the judge. An executor or administrator derives his power to act from the order of the court." (County of Los Angeles v. Morrison (1940) 15 Cal.2d 368, 371 [101 P.2d 470, 129 A.L.R. 443].)
Second, section 1510 requires that  after the payment of expenses, costs, and fees  the "remaining balance" is to be deposited in a financial institution or paid to a parent or the guardian of the estate. (8) The section does not contemplate distribution to, or disbursals from the funds of, a testamentary trust. Application of the statute would therefore wreak violence to the terms of the compromise agreement and the order approving it.
(7b) Third, and of controlling importance, section 1510 deals with the allowance of attorney's fees out of money paid or to be paid under a compromise, a covenant not to sue, an order approving the same, or a judgment. The distributive share of the trust created for Yasmin, however, is payable to the trustee through the decree of distribution solely because the last will and testament requires such distribution  not because such payment is reiterated in the written compromise and in the order approving that settlement. (See, Estate of Wellings, supra, 192 Cal. at p. 510; cf., Estate of Rossi (1915) 169 Cal. 148, 149 [146 P. 430].)
(1b) The will has been admitted to probate; the probate is unrevoked. The order approving the compromise was made on March 6, 1964. That order had long been final before July 18, 1967, when the court directed the executors to pay respondent attorneys. (See, Estate of Auslender (1960) 53 Cal.2d 615, 630 [2 Cal. Rptr. 769, 349 P.2d 537]; Estate of McPherson (1949) 90 Cal. App.2d 17, 20 [202 P.2d 565]; Prob. Code, § 1240; Cal. Rules of Court, rule 2.) The compromise in no way altered the trustee's vested entitlement to one-fourth of the residuary estate (including mineral rights), as specified in the will; nor did it affect the testamentary direction that the trustee administer such corpus. The judicially approved compromise brought about changes only in the trustee's powers and duties to manage income and revenue, to distribute the eventual trust residue, and to terminate the trust (substantial changes to which the trustee, as a party to the compromise, agreed). As is pointed out in the dissenting opinion which *736 follows, the effect of the compromise was to transform Trust "A" into a "stable, nondefeasible asset" (from the standpoint of Yasmin's equitable interest). But that transformation had its genesis in contract. The issue here is not whether the attorneys have earned or are entitled to a reasonable fee; the issue is whether they have a right to be paid from a particular source  namely, out of corpus which the testator intended the trustee to administer. The contestant and the respondent attorneys could not nullify the provisions of the will merely by execution of the contingent fee contract and the performance of legal services. Nor could the probate court disregard the contract of compromise which it had approved by an order long since final  a contract upon which the trustee bank, as a signatory thereof, consequently had a right to rely.[10]
(9, 10) "The agreement for compromise, even when approved by decree of the court, is not in any accurate sense a modification of the will. The will as an entirety and in all its parts is established and admitted to probate. The court does not undertake to admit to probate a part of the will and to refuse to allow another part. But the agreement whereby the heirs at law on the one side and the devisees and legatees on the other have modified their rights under the will, is made matter of public record, its validity is approved by the court, and the duty of carrying out its terms is placed on those executing the will. The agreement is not incorporated into the will. The will stands by itself. Although the practice is to insert a clause in the decree of the court to the effect that the estate is to be administered in accordance with the agreement, yet the rights of the parties so far as they rest upon the agreement are contractual and not testamentary. The concessions made on the one side and accepted on the other take effect not because that is the will of the testator, but because that is the agreement of the parties. The changes wrought in the disposition of the property are not the result of changes in the will, but of concessions by the beneficiaries under the will to the heirs at law or among themselves as to the disposition to be made of the interests granted by the will. It is a change made, not in the expression of the will but in the volition of legatee or devisee as to what he is to do with the benefaction which he has received under the will. The Legislature has never undertaken to permit heirs at law and legatees to make a new will for a testator. There would be a certain anomaly in recognizing testamentary power and in providing at *737 the same time that after the maker of the will had died and his testamentary power gone forever, his disposition might be entirely frustrated. That would be a quite different matter from facilitating the making of valid contracts by competent legatees and devisees as to what they will do with that which they may receive under a will, subject to the supervisory power of the court to see that such contracts are just and reasonable toward all interests whether in being or future and contingent." (Ellis v. Hunt (1917) 228 Mass. 39, 43-44 [116 N.E. 956]; cf., Estate of Rossi, supra, 169 Cal. at p. 149.)
On this appeal, it would be inappropriate for us to speculate on the availability vel non of other means whereby respondent attorneys might effect collection. We address ourselves only to the precise order from which the appeal was taken.
The order of July 18, 1967, is reversed.
Regan, J., concurred.
FRIEDMAN, Acting P.J.
I dissent. There is no debate over the reasonableness of the fee or the value of the attorneys' services. The question is one of probate jurisdiction. Under the authority of Probate Code section 1020.1 and Estate of Baglione (1966) 65 Cal.2d 192 [53 Cal. Rptr. 139, 417 P.2d 683], and by analogy to Estate of Kerr (1966) 63 Cal.2d 875 [48 Cal. Rptr. 707, 409 P.2d 931], I think the probate court had jurisdiction to make an award out of the trust to the attorneys whose services had resulted in its transformation into a stable, nondefeasible asset. Although testamentary, the trust had been so thoroughly reconstructed by the compromise of the will contest that the fee award did not represent a tangible intrusion on the testator's intent.
A contingent fee contract of the kind involved here aids in the establishment of assets which might otherwise be lost to the will contestant. So viewed, it has great therapeutic value. That value is substantially impaired if the attorney, at the time of undertaking the project, may not look to the assets established by his work as the acknowledged source of his fee.
I make nothing of the fact that the client is sole beneficiary of the trust. Certainly the trust should not be surcharged for legal services owed by the beneficiary personally. (See DiMaria v. Bank of California (1965) 237 Cal. App.2d 254 [46 Cal. Rptr. 924].) What is important is that the legal services directly benefited the trust itself. In transforming the trust from a defeasible into a fixed asset, the services were comparable to those which result in the creation of a trust. (Cf. Estate of Stauffer (1959) 53 Cal.2d *738 124, 132 [346 P.2d 748]; Hornstein, Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards, 69 Harv.L.Rev. 658.) Assets may be rescued in this fashion only if attorneys undertake the rescue project with a firm prospect of remuneration out of the assets they establish. I would affirm the order.
A petition for a rehearing was denied May 7, 1971. Friedman, J., was of the opinion that the petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied June 9, 1971.
NOTES
[1] Three trustees of Trust "A" were designated in the will, but two resigned after probate.
[2] The will stated that the testator had intentionally omitted any provision for his wife (Yasmin's mother). The wife, individually, was a co-contestant of the will. Under the compromise, the beneficiaries and trustees of Trust "B" agreed that one-fourth of the residuary estate (excluding mineral rights) would be distributed to the wife  leaving Trust "B" with three-fourths of the mineral rights and one-half of the residuary estate (exclusive of mineral rights).
[3] The executors' "acts in executing the Compromise Agreement on behalf of the estate" are referred to in the court's order "Confirming Executors['] Execution Thereof...." The copy of the compromise itself in the settled statement on appeal does not show any signature by one acting in the capacity of executor.
[4] We are not persuaded by appellant's argument that the questioned order is ambiguous because it awarded to the attorneys 25 percent of "the distributive share of YASMIN MUHAMMAD, a Minor...." The record makes clear that the court was thereby referring to the distributive share of the testamentary trust created for Yasmin's benefit, and that appellant so understood it. "Where an ambiguity exists, `The rule with respect to orders and judgments is that the entire record may be examined to determine their scope and effect....' [Citation.]" (Estate of Careaga (1964) 61 Cal.2d 471, 475-476 [39 Cal. Rptr. 215, 393 P.2d 415].)
[5] In relevant part, section 1020.1 provides: "The court before making distribution of any property of a decedent to any assignee or transferee of any heir, devisee or legatee or before making distribution to any person other than an heir, devisee, or legatee pursuant to any agreement, request or instructions of any heir, devisee or legatee or of any attorney-in-fact of any heir, devisee or legatee may on the motion of any person interested in the estate or on the motion of the public administrator or on its own motion inquire into the consideration for such assignment, transfer, agreement, request or instructions and into the amount of any fees, charges, or consideration paid or agreed to be paid by the heir, devisee or legatee and into the circumstances surrounding the execution of such assignment, transfer, agreement, request or instructions and if it finds that the fees, charges or consideration paid by any, such heir, devisee or legatee is grossly unreasonable or that any such assignment, transfer, agreement, request or instructions was obtained by duress, fraud or undue influence it may refuse to make distribution pursuant thereto except upon such terms as it deems just and equitable...."

All statutory references in this opinion are to the Probate Code.
[6] Section 718.5 provides, in relevant part: "After the lapse of 60 days from the issuance of letters testamentary or of administration, the executor or administrator, with the approval of the court, may compromise, compound or settle any claim or demand by or against the estate or any suit brought by or against the executor or administrator as such, by the transfer of specific assets of the estate or otherwise...."
[7] Section 1509 provides: "A contract for attorney's fees for services in litigation, made by or on behalf of a minor, is void unless the contract is approved by the court in which the litigation is pending or the court having jurisdiction of the estate of the minor, upon petition of any person in interest. When no such contract is approved, and a judgment is recovered by or on behalf of a minor, the attorney's fees chargeable against the minor shall be fixed by the court rendering the judgment."
[8] On the date of the court's order, section 1510 provided in relevant part as follows: "If the court approves a compromise of, or the execution of a covenant not to sue on, a minor's disputed claim for damages, money or other property, or approves a compromise of a pending action or proceeding to which a minor, or insane or incompetent person is a party, or gives judgment for such a person, and the money or the value of other property to be paid or delivered under such compromise, covenant, order or judgment does not exceed ten thousand dollars ($10,000), and there is no guardian of the estate of the minor, or insane or incompetent person, such court, in its discretion, may require that the remaining balance of any money paid or to be paid under such compromise, covenant, order or judgment, after payment of all expenses, costs and fees as approved and allowed by the court, be deposited in a bank or banks, or a trust company or companies, or be invested in an account or accounts in an insured savings and loan association or associations, subject to withdrawal only upon the order of the court, or it may require a guardian of the estate to be appointed and the money or the other property to be paid or delivered to such guardian, or prescribe such other conditions as the court in its discretion deems to the best interests of the minor, or insane or incompetent person; provided, however, that if the money or the value of other property to be paid or delivered under said compromise, covenant, order or judgment does not exceed one thousand dollars ($1,000), and said money or property is to be paid or delivered for the benefit of a minor, the court may direct that all or any part of the money or the property be paid or delivered to a parent of the minor, without bond, upon the terms and under the conditions specified in Section 1430 of the Probate Code. If the money or the value of other property to be paid or delivered under such compromise, covenant, order or judgment exceeds ten thousand dollars ($10,000), and there is no guardian of the estate of the minor, or insane or incompetent person, such court must require a guardian of the estate to be appointed and must direct that the money or the other property be paid or delivered to the guardian, or in lieu of the appointment of a guardian of the estate, must require that the remaining balance of any money paid or to be paid under such compromise, covenant, order or judgment, after payment of all expenses, costs and fees as approved and allowed by the court, be deposited in a bank or banks, or a trust company or companies, or be invested in an account or accounts in an insured savings and loan association or associations, subject to withdrawal only upon order of the court, and as to other property to be paid or delivered, the court shall prescribe such conditions as it may deem to the best interests of the minor, or insane or incompetent person.

"Upon approval of a compromise of, or the execution of a covenant not to sue on, a minor's disputed claim, or approval of a compromise of a pending action or proceeding to which a minor, or insane or incompetent person is a party, or giving judgment for such a person, providing for the payment or delivery of money or other property, the court making the order or giving judgment, and as a part thereof, shall make a further order authorizing and directing a parent of the minor or guardian of the minor, or insane or incompetent person, or the payer of any money to be paid for the benefit of such person, to pay, from the money or other property to be paid or delivered, such reasonable expenses (medical or otherwise and including reimbursement to a parent or guardian), costs and attorney's fees as the court shall approve and allow therein. The remaining balance of such money or other property shall be paid, delivered or deposited as hereinabove provided. ..." (Italics ours.)
[9] Section 1511 provides: "Whenever the court fixes or approves an attorney's fee for services rendered to or for the benefit of a minor in litigation pending before it, it may direct the judgment debtor to pay such fee to the attorney and the balance of the judgment to the guardian ad litem or general guardian."
[10] In this connection, we note that respondents' petition for attorneys' fees requested "That the Court make an Order, modifying its prior approval of the Agreement of Compromise as between the Executors, beneficiaries and distributees of the Estate of ATA MUHAMMAD, deceased, to the extent necessary, and proper in order to effect the payment to Petitioners BELLI, ASHE, GERRY & ELLISON and VASILIOS B. CHOULOS of such sum or sums of money as the Court may determine and fix as reasonable attorneys' fees." (Italics ours.)