(No. 5810.   May 31, 1932.)

PAUL G. SAVIC, Respondent, v. B. P. KRAMLICH, President, and CHARLES F. REDDOCH, Secretary of the CRYSTAL DOME OIL & GAS COMPANY, a Corporation, Appellants, and S. L. TIPTON, Intervenor and Respondent, and CRYSTAL DOME OIL & GAS COMPANY, Intervenor and Appellant.

[12 Pac. (2d) 260.]

J. B. Eldridge, for Appellants.

S. L. Tipton, for Respondents.

LEE, C. J.—Plaintiff and respondent, Paul G. Savic, claiming to be a shareholder owning 2,004 shares of the capital stock of the Crystal Dome Oil & Gas Company, an Idaho corporation, for which stock no certificate had been issued, sued defendants and appellants, B. P. Kramlich and Charles F. Reddoch, respectively president and secretary of said company, for a writ of mandate compelling them to issue him a certificate for the stock aforesaid. He plead that on August 10, 1929, the company's board of directors, in regular meeting, all being present, adopted the following resolution:

" 'Moved, seconded and carried that Paul G. Savic transfer to the company by proper conveyance, all the leases held or hereafter acquired by him as trustee, or otherwise, and leases procured after August 8th, 1929, shall be taken in the name of the company and that B. P. Kramlich pay to the treasurer of the company the sum of Twenty-five Thousand Dollars, and upon so doing all of the capital stock of the company, except that subscribed by R. F. Batten and Charles F. Reddoch, shall be owned by them ratably, said parties and all the directors assenting thereto, the motion was unanimously carried.' The minutes further show the following 'Moved and seconded and carried that Paul G. Savic and B. P. Kramlich release to the treasurer of the company 1992 shares of their stock, in equal portion to be sold if necessary, and the proceeds thereof to be paid into the treasury of the company and used for corporate purposes only, and any of said stock not so sold to be returned to the said parties ratably.' "

After setting forth this resolution, he averred that said 1,992 shares of stock were released to the company; that he transferred to the corporation by proper conveyance all the leases acquired by him as trustee or otherwise; that Kramlich paid into the company's treasury $25,000; that there then remained 4,004 shares of stock, of which Kramlich owned 2,000 and he 2,004; that his demand that appellants issue him a certificate therefor, as under the by-laws it was their alleged duty to do, had been refused, and that he was without speedy or adequate remedy at law, the stock being of special and peculiar value to him, in that it would, if issued, give him control of said company and enable him to exercise such control at stockholders' meetings.

It is unnecessary to go into the array of motions and demurrers interspersed throughout the transcript, since the vital contentions can be disposed of in discussing the merits of the several declaratory pleadings of the parties. Defendants and appellants answered, denying Savic's ownership of 2,004 shares of capital stock or any stock in excess of the value of $5,000, charging that the leases transferred were of no greater value than $5,000; that they were not necessary to the corporate business; that the company had tendered them back only to be met by a refusal; that the board of directors in adopting the resolution set out had acted in bad faith, in violation of the Constitution of the state of Idaho, without authority, fraudulently, knowingly and intentionally overvaluing the leases at the instigation of Savic, in order to please him and give him control of the company; that respondent had a plain, speedy and adequate remedy both at law and equity, since "there is a real, substantial and subsisting controversy between said corporation and said plaintiff as to his right to claim said stock, and that he has no clear and undisputed right thereto," and that the Crystal Dome Oil & Gas Company was a necessary and indispensable party defendant.

At this juncture, respondent, S. L. Tipton, intervened, claiming that on or about March 1, 1930, respondent Savic employed him as an attorney to sue for the stock in question

and agreed to pay him $25,000 for his services, further agreeing that, when the stock certificate should be issued for the 2,004 shares, he would assign the same to intervenor as collateral security for his promised fee, ''in addition to his statutory lien as attorney in said cause''; that, in pursuance of such agreement, intervenor did bring an action against appellants, Kramlich and Reddoch, to compel them to issue Savic a certificate for the stock aforesaid; that, while suit was pending and on or about June 10, 1930, Savic did assign him the stock mentioned; that defendants and appellants, Kramlich and Reddoch, were each ''notified and had knowledge of said assignment as collateral security and of Intervenor's lien prior to any judgment of the Crystal Dome Oil & Gas Co. a corporation defendant against the plaintiff''; that on or about June 18, 1930, the Crystal Dome Oil & Gas Company obtained a judgment against Savic and, to satisfy said judgment, had an execution issued and made a pretended sale of all the capital stock owned or claimed by the judgment debtor in and to the company's capital stock, ''which sale included the said two thousand and four shares'': he prayed that a certificate for the same be ordered issued and assigned to him as collateral security for his fee.

Defendants and appellants, Kramlich and Reddoch, answered, denying most of intervenor's allegations, affirmatively pleading that neither had any notice of the assignment, averring that he had dismissed the suit instituted for his client, had neither rendered service nor procured judgment for his fee, that the agreement for the attorney's fee was ''feigned, fictitious and grossly excessive,'' in that his services already performed or expected to be performed for the recovery of this stock were not reasonably or justly worth the amount claimed: they also plead that the order and sale had become final, the appeal therefrom having been dismissed by this court.

In turn, the Crystal Dome Oil & Gas Company intervened, in effect setting up the matter contained in the answers of Kramlich and Reddoch to the Savic and Tipton complaints.

After a hearing, the court found for intervenor Tipton and for respondent Savic as against appellants Kramlich and Reddoch and intervenor Crystal Dome Oil & Gas Company. It ordered appellants, Kramlich and Reddoch, as president and secretary, to "make out, sign and deliver to intervenor, S. L. Tipton, the stock certificate of the Crystal Dome Oil & Gas Company for 2004 shares." Kramlich, Reddoch and the Crystal Dome Oil & Gas Company have appealed from the judgment.

It will be unnecessary to consider all the twenty-seven errors assigned. The trial court found that before his alleged assignment to Tipton, Savic was the owner of the 2,004 shares of stock claimed by him. Reason given for the finding was that Savic's allegation of ownership was admitted by the answer. The record shows that such allegation was directly denied. However, the evidence abundantly supports the finding. Appellants' two main contentions are that the board of directors *ab initio* had no right to issue stock but that the corporation must have issued it and that the resolution adopted by the directors and acted upon by respondent Savic was a gross fraud upon the company, knowingly and intentionally perpetrated at the time. By section 27, chapter 262, Laws of 1929, page 568, it is provided that the business of every corporation shall be managed by a board of directors. Subdivision 1 of section 12 of the same act, at page 553, provides that each shareholder shall be entitled to a certificate of stock signed by the president and secretary, and section 14 following inhibits the issuance of any certificate of stock until the shares represented thereby have been fully paid for. When stock is paid for, it is in fact issued, irrespective of the issuance of the certificate which is nothing more nor less than evidence of the stockholder's ownership. (*Pacific National Bank of Boston v. Eaton,* 141 U. S. 227, 11 Sup. Ct. 984, 35 L. ed. 702; 5 Fletcher's Cyc. Corp., par. 3427, p. 5610, par. 3478, p. 5740.) Though actual fraud in the transaction was charged, the record wholly fails to bear out the pleading. Actual fraud having been eliminated, did inadequacy of

consideration render the transaction voidable? Virtually identical with section 9, article 11 of our own Constitution is the verbiage of the California provision, "No corporation shall issue stocks or bonds except for labor done, services performed, or money or property actually received." (Sec. 11, art. 12, Cal. Const.) Discussing the very contention here, the California court of appeals held, "If there is a consideration of some sort, and the transaction is one that is intended to redound to the benefit of the corporation in the prosecution of its corporate purposes, then we should say that, so far as are concerned the requirements of the law in that regard, the consideration is sufficient, and, in a sense, adequate, although it may not be equal in value to that of the stock." (*California Trona Co. v. Wilkinson*, 20 Cal. App. 694, 130 Pac. 190, 193.) That the Crystal Dome Oil & Gas Company actually received the benefit of 1,992 shares, 944 of which it sold, was "some sort of a consideration." If the company could not itself, upon this ground, avoid the transaction, upon what theory could it question the assignment to intervenor Tipton of Savic's right in and to the stock? The judgment secured by the company against Savic did not supersede Tipton's right under the assignment. At the time of the assignment, the company was not even a creditor. What agreement Savic and Tipton had was none of its concern. According to the testimony, the fee was to be paid out of the stock. The assignee was restricted to that stock for his compensation; and, if no stock was forthcoming or, when realized, it should prove worthless, the assignee would receive nothing. Evidently, Savic's attorney was gambling upon a contingency. At its par value of $25 per share, the assigned stock would have been worth approximately $50,000: a contingent fee of 50 per cent is by no means excessive.

There is no merit in the contention that by taking the assignment Tipton lost his statutory lien. "The mere taking of other security for a debt secured by a lien does not, as a rule, constitute a waiver of the lien." (19 Am. & Eng. Ency. of Law, 2d ed., p. 29.) Further, both the testi-

mony of Tipton and Savic is to the effect that the assignment was to operate as additional and collateral security. The company had full notice of the assignment on July 15th, prior to the sale on execution, and it made no difference whether the assignee lost his lien or not: by virtue of the assignment, he had acquired the legal title to what his assignor had. If the value of the stock assigned should prove more than ample to satisfy the assignee's fee, the company would be entitled to the overplus by reason of the execution sale. That, however, would be no defense to the assignee's demand that the stock certificate be issued to him.

Finally, it is urged that *mandamus* is not the proper remedy and that the execution and issuance of a stock certificate cannot be compelled by writ, when a real and subsisting controversy is involved. There is a very substantial difference between the situation here and where *mandamus* is invoked to compel a transfer on the company's books of a certificate, the legal title to which is in dispute. In the latter case, *mandamus* will not lie: it will lie to compel the execution and issuance in the first instance. An exhaustive authority is that of *Capitol Petroleum Co. v. Haldeman*, 66 Colo. 265, 180 Pac. 758, where the statute under consideration was substantially identical with C. S., sec. 7254, specifying the instances in which the writ will issue.

The doctrine of that case rests upon the essential so succinctly declared in the opinion, "The evidence amply shows that the plaintiff has a *clear* right to have issued to her, and to receive, the certificates demanded from defendants and sued for." (Italics ours.) Reaffirming this principle, the same court recognizing *mandamus* as the proper remedy to compel the issuance of stock certificates announced in *Sturner v. James A. McCandless Inv. Co. et al.*, 87 Colo. 23, 284 Pac. 778, 779, "No one is entitled to the writ whose right is not clear and unquestionable. If there is a doubt about his right, *mandamus* will not lie."

Nor did the intervenor have an adequate remedy by action at law or in equity. Where one's right to vote in stockholders' meetings depends upon his shares and that

stock, such as in this case, is more or less speculative, such actions afford a remedy neither speedy nor adequate. (*Dennett v. Acme Mfg. Co.*, 106 Me. 476, 76 Atl. 922; *Capitol Petroleum Co. v. Haldeman, supra.*)

Judgment affirmed; costs to respondent.

Givens, Varian and Leeper, JJ., concur.