849 P.2d 115

Gary W. STORRER, Plaintiff–Respondent,

v.

John L. RUSSO, Defendant–Appellant.

John L. RUSSO and Merrill Bean, Counterclaimants–Appellants,

v.

Gary W. STORRER, Counterdefendant–Respondent,

and

Westland Motor Company, as an involuntary defendant, Defendant.

No. 18561.

Court of Appeals of Idaho.

Aug. 29, 1991.

Webb, Burton, Carlson, Pedersen & Webb, Twin Falls, for appellants. Lloyd J. Webb argued.

Stephan, Kvanvig, Greenwood, Stone & Trainor, Twin Falls, for respondent. Laird B. Stone argued.

SWANSTROM, Judge.

This litigation arises from the sale of an automobile dealership. The focus of the case is a stock purchase agreement between John Russo and Gary Storrer. When Storrer attempted to exercise his option to purchase more than the stated yearly block of stock, Russo refused to honor the option and transfer the additional shares to Storrer. Storrer brought an ac-

tion to compel specific performance of the agreement, in particular the dealer's option provision. Russo counterclaimed seeking a declaration of the obligations of the parties under the agreement. Storrer prevailed in district court, and Russo was ordered to complete the transfer of stock pursuant to the option provision in the agreement.

Russo appeals the decision of the district court and points to error in the district court's interpretation of the parties' agreement. Russo claims that the district court erred in finding that the agreement was not ambiguous and that there was only one class of stock in the corporation when the agreement was signed. He also claims that specific performance should not have been granted, because such equitable relief is not available to a party with unclean hands. We affirm the judgment of the district court.

Storrer agreed to purchase the corporate stock of Westland Motor Co., a car dealership located in Twin Falls, Idaho. From the date of its founding in 1984, the dealership was operated by Jerry Preece, the president of Westland Motor Co. Preece was a minority shareholder, owning 20,000 shares of the non-voting common stock (Class A stock) and 2,000 shares of the voting common stock (Class B stock). The balance of the original allocation of the Class A stock, 80,000 shares, was owned by Russo; the balance of the Class B stock was owned 4,000 shares by Russo and 4,000 by David Bean.[1]

With the approval of the corporation, Storrer was to become the dealer/owner of the corporation through a buy-out of all of the stock over a period of seven years. In 1988, Storrer entered into a contract with Jerry Preece to buy Preece's interest in Westland Motor Co. Preece's shares had increased to 31,300 because of periodic purchases of stock he had made from Russo between 1984 and 1988. Storrer also en-

tered into a separate agreement with Russo to buy Russo's remaining 68,700 shares of stock in equal blocks of 9,814.28 shares for six years and 9,814.32 in the seventh year, after which time Storrer would have full ownership of the company. The Storrer–Russo agreement also contained a provision, drafted and inserted by Storrer, which reads: "The Dealer Operator may, at his option, during the term of this Agreement purchase more than a block of nine thousand eight hundred fourteen and twenty-eight hundredths (9,814.28) shares in any one year."

Russo argued to the trial court that the option provision inserted into the agreement by Storrer conflicts with the next succeeding paragraph which reads as follows: "This Agreement may be completed prior to the term of years stated in Paragraph 1 above, if mutually agreeable to the parties and approved by Pontiac Division General Sales Manager." Russo and Merrill Bean testified that the option provision was only intended to be Storrer's "safety valve" in the event that he was unable in any given year to purchase the full extent of the yearly block of shares, such as happened in 1988. Its purpose, they claimed, was not to allow Storrer to unilaterally accelerate the agreement. They claimed that the option to purchase more than the stated yearly amount was limited by the language in Paragraph 2 calling for agreement of all the parties.

On appeal, Russo disagrees with the district judge's conclusion that the agreement is not ambiguous and with the court's interpretation of the stock purchase agreement. Russo insists on the one hand that the clear language of the agreement, when read as a whole, requires the mutual assent of the parties before Storrer can exercise his option. Alternatively, Russo asserts that to require mutual agreement of the parties before accelerating the number of shares

---

1. David Bean is the brother of Merrill Bean who owned a dealership in the state of Utah. The district judge's findings show that Merrill had a "side agreement" with Russo which made Merrill a "50% partner" with Russo in Russo's original investment in the 80,000 shares of Class A stock and 4,000 shares of Class B stock in West-

land Motor Company. Merrill's interest in "Russo's stock" was disclosed to Storrer. It is not disputed that Merrill is bound by the Russo–Storrer stock purchase agreement and also by decisions of the corporation's officers and stockholders.

purchased would be in line with construing the ambiguity against its drafter. The last issue raised by Russo disputes the district court's reading of the phrase "all of the stock" as used in the agreement.

We exercise free review over the determination of whether a contract is ambiguous. *Clark v. St. Paul Prop. & Liab. Ins. Cos.,* 102 Idaho 756, 757, 639 P.2d 454, 455 (1981); *Hoffman v. United Silver Mines, Inc.,* 116 Idaho 240, 246, 775 P.2d 132, 138 (Ct.App.1989). A contract is ambiguous, as a matter of law, if it is reasonably susceptible to conflicting interpretations. *Hoffman,* 116 Idaho at 246, 775 P.2d at 138, *citing Rutter v. McLaughlin,* 101 Idaho 292, 612 P.2d 135 (1980).

In construing the parties' agreement, we look first to the instrument itself. *E.g., Suchan v. Suchan,* 106 Idaho 654, 682 P.2d 607 (1984). The paragraph where we find the dealer option provision (Paragraph 1) contains the only restriction on the exercise of the option, and it relates to the source of funds to be used for the stock purchases. According to the plain meaning of Paragraph 1, the dealer may elect to buy more than the yearly block of stock *at his option,* provided that he use specifically designated funds. The next paragraph (Paragraph 2), referring to the mutual agreement of the parties, governs in the event either party should wish to complete the agreement in less than the stated seven-year term.

The district court admitted extrinsic evidence to determine whether there was ambiguity in the agreement, as claimed by Russo. *See, e.g., Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, 69 Cal.Rptr. 561, 566 n. 8, 442 P.2d 641, 646, n. 8 (1968). Russo offered testimony to show that the exercise of the dealer's option in Paragraph 1 was not at the dealer's option absolutely, but that the option was available only upon the mutual agreement of the parties. However, we do not agree with Russo that Paragraph 2 limited the exercise of the option to instances where all the parties agreed to sell Storrer more than the stated yearly amount. We conclude, as did the district court, that the agreement is unambiguous.

The district court also found that the term "all of the stock" used in the agreement was not ambiguous, contrary to Russo's contention that the agreement dealt only with the Class A stock of the corporation. Russo intimated that the agreement provided only for the sale of the non-voting Class A stock and that Storrer was not to have control of the corporation even after he had purchased all of the Class A stock. The court found this explanation implausible and concluded that two classes of stock had originally been authorized in the articles of incorporation, but later had been unified by resolution of the corporation, dated March 14, 1985.

Having previously ruled that the contract is clear and unambiguous, determining the meaning and effect of the contract is a question of law. *DeLancey v. DeLancey,* 110 Idaho 63, 714 P.2d 32 (1986); *Suchan v. Suchan, supra; Hoffman v. United Silver Mines, Inc.,* 116 Idaho at 245, 775 P.2d at 137. Hence, this Court is not bound by the conclusions of the trial court. *Clark v. St. Paul Prop. & Liab. Ins. Cos.,* 102 Idaho at 757, 639 P.2d at 455. We will draw our own conclusions from the evidence presented as to whether there was only a single class of stock at the time Storrer and Russo signed the stock purchase agreement.

Pursuant to the Articles of Incorporation of Westland Motor Co., Class A common stock was designated as non-voting shares and Class B common stock was designated as voting shares. The only certificates of stock issued represented Class A common shares. Russo argues that the court mistakenly viewed the failure of the corporation to issue the Class B stock as a basis for its finding that only one class of stock existed at the time of the Storrer–Russo agreement. Russo cites *Savic v. Kramlich,* 52 Idaho 156, 12 P.2d 260 (1932), in support of his argument; however, Russo misconstrues the reasoning of the district court. The resolution of March 14, 1985, reflecting a vote of the board of directors to unify the two classes of stock, is the

conclusive document. The vote to adopt the resolution had the effect of amending the articles of incorporation. I.C. § 30–1–59. To allow Russo and Merrill Bean, who were members of the board and officers of the corporation on March 14, 1985, to disclaim the change to a single class of stock accomplished by the resolution would be a travesty. We affirm the district court's finding of only one class of stock at the signing of the Storrer–Russo agreement.

As his final claim of error, Russo argues that an award of specific performance was improper because Storrer had "unclean hands." There was, however, no finding made by the district court that Storrer had "unclean hands" which would have been a bar to the relief he sought. On the contrary, the district court enumerated several actions by Russo and Bean which the court characterized as disingenuous and in bad faith. The district judge expressly stated that Russo and Bean were not believable. Russo's argument is vague and imprecise, and we construe it more as a criticism of the court's findings than a valid claim of error.

The district court awarded fees and costs to Storrer under the terms of the stock purchase agreement. Pursuant to those same terms, we award fees and costs to Storrer in this appeal.

The judgment for specific performance is affirmed.

WALTERS, C.J., and SILAK, J., concur.