## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 47483

DAVID M. WEITZ and JOHN R. TAVARES,

    Plaintiffs-Respondents,

v.

DANIEL P. WEITZ,

    Defendant-Appellant,

and

JOHN WENDELL WEITZ,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, November 2020 Term

Opinion Filed: December 22, 2020

Melanie Gagnepain, Clerk

---

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. George A. Southworth, District Judge.

The decision of the district court is affirmed.

Law Office of Vernon K. Smith, Boise, for Appellant. Vernon K. Smith argued.

Givens Pursley, LLC, Boise, for Respondents. Michael O. Roe argued.

---

BURDICK, Chief Justice.

    This case arises from a dispute over the ownership of Treasure Valley Manufacturing & Recycling, Inc., ("TVM"). Daniel P. Weitz appeals an order and judgment entered in the Canyon County district court granting summary judgment in favor of David M. Weitz and John R. Tavares and declaring them the exclusive owners of TVM. The district court granted summary judgment in favor of David M. Weitz and John R. Tavares after determining that Daniel P. Weitz had failed to produce any evidence demonstrating a genuine dispute of material fact and that they were entitled to judgment as a matter of law.

1

# I.   FACTUAL AND PROCEDURAL BACKGROUND

TVM is a closely held family corporation started by Phil Weitz and his three sons—Daniel, David, and John Weitz[1]—in 1987. TVM's primary business is scrap metal recycling. TVM's articles of incorporation authorize the issuance of 100 shares of common stock and list Daniel, David, and John as the original incorporators. The parties do not dispute that from 1987 until approximately 1995, Daniel, David, and John each had an ownership interest in TVM.

David and longtime family friend John Tavares ("Tavares") began working full-time at TVM in 1987. John also worked part-time sporadically for TVM in its early years. TVM was not very profitable at first. According to David and Tavares, working at TVM involved long, physical hours crushing cars and cutting up large pieces of steel and other scrap metal. The work was greasy, loud, and sometimes dangerous. Daniel did not work for TVM at any point, focusing his time on other ventures. TVM has grown substantially in value since its inception.

TVM was not the only business owned and operated by the Weitz family. They also owned Idaho Farmway, which was a large farming operation, as well as various other ventures such as Weitz & Company, Inc., and TVM Development. At the center of each family business was Phil. One thing all parties agree on is that, regardless of formal documentation, Phil was in charge. Phil financed, managed, and kept the records for all the family businesses. He moved assets, funds, ownership interests, and personnel between the brothers and entities as he saw fit. He is described consistently throughout each brother's testimony as the family's "patriarch," commander, and decision-maker. When it came to the family businesses, "[w]hat Phil said was the law."

Over the years, Daniel and John started several businesses of their own. Daniel's businesses included Sprinkler Irrigation Co., Mountain Home Development Co., Fabco Fireplaces and Stoves, Investment Recovery, Inc., Superior Manufacturing Co., Inc., Ace Agricultural Equipment Co., Canyon Holding Co., Irsco Steel Co., and others. John had TVM Auto Sales, John Weitz Motorsports, Inc., and Rocky Mountain Motors. Phil provided financing for many of Daniel and John's business ventures. David, on the other hand, put all his attention and time towards the success of TVM.

---

[1] To eliminate confusion, we refer to Phil, Daniel, David, and John Weitz by their first names and all other parties by their last name.

Tavares, who worked for Idaho Farmway from 1983 to 1987, began working for TVM with David in 1987 and has worked there full-time ever since. In 1989, Tavares asked Phil and David for an equity stake in TVM, pointing to his continued dedication to the company and the fact that he was starting a family. Phil granted his request, giving Tavares twenty-five shares in TVM.

Phil passed away in 2013, naming David as the personal representative of his estate. The estate proceedings were both lengthy and contentious. After a dispute arose between David and his brothers concerning his handling of the estate, they sought to remove him as the personal representative. During the estate proceedings, Daniel and John also claimed they each had a one-third ownership interest in TVM.

In response to Daniel and John's ownership claim, David and Tavares filed the present action on October 11, 2018, requesting the district court enter a judgment declaring them 100% owners of TVM. David and Tavares alleged that Phil had given Tavares his 25% share of TVM in 1989, and that in 1995 Phil transferred Daniel and John's 25% ownership interests to David, giving him a 75% stake in the company. Daniel and John filed a response and counterclaim alleging they collectively owned two-thirds of TVM. The district court described their responsive document as a "rambling, 26-page answer . . . filled with derogatory insults, allegations of misconduct and fraud, non-specific questions, and accusations of theft and other conspiracies." David and Tavares filed a motion to strike and the district court struck the answer in its entirety, ordering Daniel and John to file an answer compliant with the Idaho Rules of Civil Procedure.

Daniel and John filed an amended answer and counterclaim. David and Tavares again moved to strike portions of the responsive pleading on the grounds that it contained inadequately pled affirmative defenses. The district court struck the defenses in part. The parties engaged in a protracted discovery dispute, culminating with the district court granting two motions to compel Daniel and John to supplement their discovery responses. David and Tavares requested attorney's fees and costs associated with the first motion to compel. They also requested an award of attorney's fees, but not costs, associated with their second motion to compel, which the court took under advisement.

On July 1, 2019, David and Tavares moved for summary judgment on their declaratory judgment claim as well as Daniel and John's counterclaim. David and Tavares supported their

motion for summary judgment with over 1000 pages of documentation, including personal and corporate tax records, TVM's annual filings and corporate minutes, their own affidavits, and affidavits from numerous third parties familiar with the Weitz family businesses, including the Weitz family accountant.

Daniel filed his own motion for summary judgment on July 15, 2019. He supported his motion with his own forty-page affidavit and several exhibits. A few days later, John filed a notice of substitution of counsel with the district court, indicating that he had obtained a different lawyer. On July 22, 2019, having reached a settlement, John, David, and Tavares stipulated to the dismissal of their claims and counterclaims against each other. Three days later, the district court entered an order dismissing David and Tavares's claim against John and John's counterclaim, leaving Daniel as the sole defendant/counterclaimant in the action.

The district court held a hearing on the cross motions for summary judgment at which both parties argued.[2] On September 6, 2019, the district court entered an order granting the motion for summary judgment brought by David and Tavares and denying Daniel's motion for summary judgment. The district court entered a judgment declaring David and Tavares 100% owners (75% and 25% respectively) of TVM that same day.

Two weeks after the district court entered judgment, David and Tavares submitted a memorandum requesting fees and costs associated with the entire litigation. Daniel objected and the district court set the matter for a hearing. Before the hearing could be held, Daniel appealed the district court's summary judgment order and final judgment. The district court vacated the hearing pursuant to Idaho Appellate Rule 13(a). After determining that a hearing was unnecessary, the district court issued a decision awarding David and Tavares attorney's fees and costs associated with discovery sanctions imposed on Daniel, but denied their request for attorney's fees and costs associated with the rest of the litigation. Daniel also appeals from the district court's decision on attorney's fees and costs.

## II.    ISSUES ON APPEAL

1. Did the district court err in granting summary judgment in favor of David and Tavares and entering a judgment declaring them the exclusive owners of TVM?

2. Did the district court abuse its discretion in granting attorney's fees and costs to David and Tavares in connection with the discovery disputes below?

3. Are David and Tavares entitled to attorney's fees on appeal?

---

[2] The transcript for this hearing was not included in the record on appeal.

## III. STANDARD OF REVIEW

This Court applies the same standard as the trial court when reviewing a ruling on a motion for summary judgment. *Bliss v. Minidoka Irrigation Dist.*, 167 Idaho 141, 149, 468 P.3d 271, 279 (2020) (quoting *Pioneer Irrigation Dist. v. City of Caldwell*, 153 Idaho 593, 596, 288 P.3d 810, 813 (2012)). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). In determining "whether the evidence shows a genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party." *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012) (citing *Mitchell v. Bingham Mem'l Hosp.*, 130 Idaho 420, 422, 942 P.2d 544, 546 (1997)).

> Disputed facts are resolved in favor of the non-moving party, but when an action will be tried before the court without a jury, the judge is not constrained to draw inferences in favor of the party opposing a motion for summary judgment but rather the trial judge is free to arrive at the most probable inferences to be drawn from uncontroverted evidentiary facts.

*Galvin v. City of Middleton*, 164 Idaho 642, 645, 434 P.3d 817, 820 (2019) (quoting *In re Contest of Election*, 164 Idaho 102, 105, 425 P.3d 1245, 1248 (2018)) (internal quotation marks omitted). Furthermore, "[t]he standard applied when ruling on . . . a motion for summary judgment is not lessened simply because both parties have moved for summary judgment. *City of Chubbock v. City of Pocatello*, 127 Idaho 198, 200, 899 P.2d 411, 413 (1995) (citations omitted).

## IV. ANALYSIS

### A. The district court did not err in granting the motion for summary judgment brought by David and Tavares and declaring them the exclusive owners of TVM.

The district court granted summary judgment in favor of David and Tavares after reasoning that they had provided overwhelming support for the position that they were the exclusive shareholders of TVM, that Daniel failed to submit any evidence establishing a genuine issue of material fact, and that David and Tavares were entitled to judgment as a matter of law. Daniel argues that genuine issues of material fact exist that should have precluded the district court from granting the motion for summary judgment brought by David and Tavares.

Corporations in Idaho are governed by the Idaho Business Corporation Act. *See* I.C. § 30-29-101 et seq. Idaho Code section 30-29-601 provides that a corporation's articles of incorporation must set forth the number of shares that it is authorized to issue. I.C. § 30-29-601(a). Here, TVM's articles of incorporation authorized the issuance of 100 shares. Shares of a

5

corporation "may but need not be represented by certificates." I.C. § 30-29-625. A corporation is required to maintain a record of its current shareholders and the number of shares held by each. I.C. § 30-29-1601(d). However, the Idaho Business Corporation Act does not provide for proof of stock ownership.

Actual ownership of stock is determined based upon a totality of the circumstances. 18A Am. Jur. 2d *Corporations* § 607 (2020). Corporate books and records are frequently used as evidence of stock ownership. 18A Am. Jur. 2d *Corporations* § 613 (2020). However, stock certificates are merely prima facie evidence of stock ownership, they are not "necessarily required" to show actual ownership. *See Thum v. Pyke*, 8 Idaho 11, 66 P. 157, 163 (1901) (Quarles, C.J., dissenting) ("The certificate is prima facie evidence of ownership of the stock named therein, but the owner of stock need not necessarily possess a certificate showing that fact in order to entitle him to the benefits thereof."); *Savic v. Kramlich*, 52 Idaho 156, 12 P.2d 260, 262 (1932) (describing stock certificates as "nothing more nor less than evidence of the stockholder's ownership"). The actions or conduct of the parties may also be considered as evidence of stock ownership. 18A Am. Jur. 2d *Corporations* § 612 (2020). Likewise, corporate records of dividends paid to an individual are strong evidence of stock ownership. *Id.*

Here, the district court considered tax records, participation in shareholder meetings, TVM's annual filings, payment of dividends, and testimony from those familiar with TVM and the Weitz family in reasoning that the evidence provided by David and Tavares on summary judgment "overwhelmingly" supported the position that they were the sole shareholders of TVM. With respect to the evidence submitted by David and Tavares, the district court stated:

> Plaintiffs submitted over 1,000 pages of documentation, including the affidavit of accountant Val Dille, personal and corporate tax returns, annual filings, and corporate minutes naming David and Tavares as the sole shareholders of TVM since 1995. Plaintiffs also submitted several third party affidavits from individuals familiar with the Weitz family history, generally testifying that no one ever considered anyone but David and Tavares as the owners of TVM . . . .

Equally important to the district court's ruling is its discussion of the lack of evidence provided by Daniel:

> Daniel has not produced any evidence that creates a genuine issue of material fact. Daniel's cross-motion for summary judgment does not provide any authority to support his argument aside from summary judgment standards. The 16-page memorandum is devoid of citations to the factual record.

6

In support of the cross-motion for summary judgment, Daniel provided the Court with a 40-page rambling affidavit, mainly consisting of unsupported statements and vague accusations of extortion, fundamental misrepresentations, client interference, fraudulent documents, deception, wrongful misappropriation, theft, concealment, deceit, manipulation, fabrication, fraud, and others. The exhibits attached to the affidavit are equally unhelpful, containing inadmissible information and are frankly, more supportive of Plaintiffs' claims.

We conclude the district court did not err in holding that Daniel failed to establish a genuine issue of material fact necessary to survive summary judgment. David and Tavares provided voluminous evidence for consideration under a totality of the circumstances approach. For example, they provided the district court with a declaration from the Weitz family's longtime accountant, Val Dille. Dille included several documents, attached as exhibits to his declaration, which were supportive of the claim brought by David and Tavares. Specifically, TVM's stock ledger indicates that in 1987, Daniel, John, David, and Phil were each issued twenty-five shares of TVM stock. The ledger also shows that Phil's twenty-five shares were transferred to Tavares in 1989 and Daniel and John's shares were transferred to David in 1995.

Dille also kept notes from a meeting with Phil regarding TVM that occurred in the mid-1990s. Dille's handwritten notes from that meeting indicate that TVM's ownership structure was as follows:

John Weitz     25%
David Weitz   25%
Daniel Weitz  25%
John Tavares  25%

In response to a conversation Dille had with Phil in 2001, he added a note to his records indicating that David now owned Daniel and John's shares, giving him 75% ownership of TVM. Finally, Dille's declaration included a note from his discussion of TVM ownership with Phil in 2002 indicating that TVM's ownership structure was as follows:

John Tavares  25%
David Weitz   75%

In addition to Dille's declaration, David and Tavares provided declarations from numerous other individuals stating that David and Tavares owned TVM and that Daniel had no interest in the business. One of the declarants, a former business associate of Daniel, specifically recalled Daniel stating loudly "I don't care; I don't own any of that company anyway" in reference to a newspaper article about TVM.

7

In contrast, the only evidence offered by Daniel on summary judgment was his own declaration. Daniel conceded in his declaration that Phil was the commander or "patriarch" of the family and that Phil made the management decisions for the family businesses. Daniel also conceded that he never received a salary or dividend from TVM.

The primary thrust of his declaration and his argument on appeal is that in attempting to settle Phil's estate in 2015, David provided him and John with a document, referred to as the "2015 Summary Report," acknowledging their ownership interests in TVM and offering to buy each interest for $30,969.30. Daniel attached three pages from that report to his declaration. However, the pages are untitled, undated, and cannot reasonably be construed as an offer to buy shares of TVM. In fact, the first page states that David took control of the business in 1995. Therefore, if anything, the documents attached to Daniel's affidavit are evidence supporting the claim of David and Tavares that Daniel and John had been divested of their shares of TVM after 1995.

The other exhibits attached to Daniel's declaration include stock certificates in the names of David and Tavares indicating they own seventy-five and twenty-five shares of TVM respectively, copies of TVM's tax returns from 1992, 1993, and 1994, TVM's articles of incorporation, text messages and letters from settlement discussions between John and David, and various other irrelevant documents. Other than the plain assertions by Daniel that Tavares never became a stockholder in TVM, and that he has continued to retain his twenty-five shares of TVM stock, he does not offer any evidence to rebut the evidence of exclusive ownership by David and Tavares. While Daniel provided some evidence that he owned twenty-five shares of TVM before 1995, he provided zero evidence rebutting the fact that TVM's stock book now reflects that he has no ownership interest in TVM. Nor did Daniel provide any evidence rebutting the testimony and notes of the family accountant, Dille.

In sum, the only evidence provided by Daniel demonstrates that he had an ownership interest in TVM from the time of its creation until 1995. David and Tavares do not dispute that fact. However, David and Tavares provided a substantial amount of evidence that Daniel was divested of his ownership interest in TVM in 1995. Daniel has not offered *any* evidence to create a genuine dispute of material fact regarding his ownership, or lack thereof, of TVM after 1995. Accordingly, the district court did not err in granting summary judgment in favor of David and Tavares and declaring them the exclusive owners of TVM.

**B. The district court did not abuse its discretion in granting attorney's fees to David and Tavares in connection with the discovery disputes below.**

The district court awarded David and Tavares $25,000 in attorney's fees as sanctions for Daniel's discovery violations pursuant to Idaho Rule of Civil Procedure 37(a)(4). Daniel argues on appeal that David and Tavares did not request attorney's fees under Rule 37(a)(4) and that the district court abused its discretion in making a sua sponte award of attorney's fees on that basis.

Daniel is correct that to be awarded attorney's fees, "a party must actually assert the specific statute or . . . rule on which the award is based; the district judge cannot sua sponte make the award or grant fees pursuant to a party's general request." *Bingham v. Montane Res. Assocs.*, 133 Idaho 420, 424, 987 P.2d 1035, 1039 (1999). However, Daniel's argument omits one detail: David and Tavares requested attorney's fees pursuant to Rule 37(a) in both of their memoranda for attorney's fees associated with bringing the motions to compel discovery. Accordingly, the district court did not abuse its discretion in awarding attorney's fees to David and Tavares under Rule 37(a) in connection with their motions to compel discovery.

**C. David and Tavares are entitled to attorney's fees on appeal.**

David and Tavares request attorney's fees on appeal pursuant to Idaho Code section 12-121. They argue that Daniel pursued this appeal frivolously, unreasonably, or without foundation because he failed to present "any legitimate points of law or fact as to why this Court should reverse the trial court's grant of summary judgment . . . ."

Idaho Code section 12-121 provides for the award of reasonable attorney's fees "[i]n any civil action . . . brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. "Such circumstances exist when an appellant has only asked the appellate court to second-guess the trial court by reweighing the evidence or has failed to show that the trial court incorrectly applied well-established law." *PHH Mortg. v. Nickerson*, 160 Idaho 388, 400, 374 P.3d 551, 563 (2016) (quoting *City of Boise v. Ada Cnty.*, 147 Idaho 794, 812, 215 P.3d 514, 532 (2009)).

Here, a large portion of Daniel's briefing on appeal was dedicated to contentions of fraud, misrepresentation, theft, and other unfounded allegations that were not properly pled before the district court. These allegations were simply irrelevant to the district court's decision granting summary judgment. The balance of Daniel's argument on appeal is that genuine issues of material fact existed that should have precluded summary judgment, yet he fails to explain how any of the evidence offered by him rebutted the evidence presented by David and Tavares. In

fact, Daniel's briefing is devoid of any cogent argument with respect to Dille's testimony, the testimony of the other lay witnesses, or the conclusory nature of his own affidavit.

We hold that Daniel pursued this appeal frivolously, unreasonably, and without foundation. Therefore, David and Tavares are entitled to attorney's fees incurred in connection with this appeal.

## V. CONCLUSION

For the reasons discussed above, we conclude that the district court did not err in granting summary judgment in favor of David and Tavares and did not abuse its discretion in awarding them attorney's fees as sanctions for Daniel's discovery violations. Accordingly, the judgment declaring David M. Weitz a 75% owner of TVM and John R. Tavares a 25% owner of TVM and the order awarding David and Tavares $25,000 in attorney's fees are affirmed. Attorney's fees and costs on appeal are awarded to David and Tavares.

Justices BRODY, BEVAN, STEGNER, and MOELLER **CONCUR.**