Filed 10/25/24  Estate of Hutaff CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| Estate of CAROLINE HUTAFF, Deceased. | |
| RITA KAHLER et al., | |
|    Petitioners and Respondents, | G062900 |
|      v. | (Super. Ct. No. 30-2019-01089519) |
| VENUS T. MYNATT, as Executor, etc., | O P I N I O N |
|    Objector and Appellant. | |

Appeal from an appealable order of the Superior Court of Orange County, Aaron W. Heisler, Judge. Reversed and remanded.

Law Office of Alan S. Yockelson and Alan S. Yockelson, for Objector and Appellant.

Bunt & Shaver and David N. Shaver for Petitioner and Respondent.

\* \* \*

# INTRODUCTION

When Caroline Hutaff died in 2019, she left a will (the Will) creating a testamentary trust naming her sister Venus Thecla Mynatt (Mynatt) as trustee and her only child, her son Jason Christopher Kahler,[1] as beneficiary. The Will provides that if Jason were to die "before becoming entitled to receive distribution of his entire trust," then the trust property would be distributed to Mynatt outright. A year later, while Hutaff's Will was still in probate, Jason died intestate. From out of the woodwork appeared Jason's three half-siblings—children born to Jason's father after leaving Jason and his mother when Jason was a newborn—to claim the property that was in the testamentary trust.

The probate court, in granting the half-siblings' petition for instructions, concluded that under the terms of Hutaff's will Jason was, at the time of his death, entitled to receive distribution of the entirety of the trust property. Accordingly, the court ruled the trust property would pass to the half-siblings as Jason's heirs.

Exercising de novo review, we reverse. We conclude that, under the plain meaning of the terms of the will, Jason died before he was entitled to receive the trust property because a condition for that entitlement—the trustee's division of the property into shares—had not been met. Although equitable title to the trust property passed to Jason upon Hutaff's death, equitable title did not in itself confer on Jason the right to receive distribution of the trust property. Thus, the property that would go into the testamentary trust must be distributed to Mynatt, a result which is keeping

---

[1] We refer to Jason Christopher Kahler as Jason to avoid confusion with his father, Roger James Kahler (Kahler).

with Hutaff's firm and unequivocal intent that her estate be used to take care of Jason and, outside of that goal, to go only to Hutaff's own family members.

## BACKGROUND

### I.

#### UNDERLYING FACTS

Hutaff created the Will dated July 18, 1986. She died on March 3, 2019 at the age of 80. The Will was admitted to probate on September 18, 2019.

Hutaff was married twice; both marriages ended in divorce. Her first marriage was to Kahler. Hutaff and Kahler had one child, their son Jason, who was born on October 18, 1962.

Kahler left Hutaff when Jason was a newborn. Hutaff and Kahler divorced in 1964. Kahler remarried five times (once before his divorce from Hutaff was final) and sired three more children: Krystal K. Kahler, Rita Ann Leilani Kahler-Zatco, and Roger James Kahler II[2]. Jason knew nothing about his father and was never aware of any half-siblings.

Jason died intestate on March 21, 2020 at the age of 57. He never married and had no children. He was living with Hutaff at her home at the time of her death and continued to live there until he died.

Hutaff had four siblings, including her sister Mynatt. Hutaff and Mynatt were very close. In creating an estate plan, Hutaff's main concern was for Jason to be taken care of. Outside of that, Hutaff wanted her estate to go to Mynatt by means of a trust which Mynatt would manage.

---

[2] We refer to Krystal Kahler, Rita Ann Leilani Kahler-Zatco, and Roger James Kahler II collectively as the Kahlers.

## II.

## SIGNIFICANT PROVISIONS OF THE WILL

Three articles of the Will are significant here. Under Article II, all of Hutaff's personal and tangible property is bequeathed to Jason. Under Article III, the residue of Hutaff's estate is placed in a testamentary trust of which Mynatt is appointed trustee. Article III states in part: I give the residue of my estate, in trust, to the Trustee, Venus Thecla Mynatt. . . . My Trustee shall hold, administer and distribute said residue as follows. . . ."

Section 2 of Article III addresses distribution of the trust principal. Section 2 provides: "When Jason Christopher Kahler attains age thirty-five (35), the Trustee shall distribute to the child one-half (1/2) of the principal of the child's trust as then constituted; when the child attains age forty (40), the Trustee shall distribute to the child the undistributed balance of his trust. If the child has already attained age thirty-five (35) or forty (40) at the time the trust estate is divided into separate shares, the Trustee shall, upon making the division, distribute to the child one-half (1/2), or all of his share, respectively."

Section 3 of Article III and section C of Article IV, which concern the contingency of Jason's death, are at the core of this dispute. Section 3 of Article III provides: "If my child dies before becoming entitled to receive distribution of his entire trust, then my estate shall be distributed outright to Venus Thecla Mynatt or if she is not living to Mary F. Correa."

Section C of Article IV provides: "If at the time of my death, or at any later time before full distribution of the trust estate, all my issue are deceased and no other disposition of the property is directed by this Will, the trust estate or the portion of it then remaining shall thereupon be distributed to those persons who would then be my heirs, their identities and respective

4

shares to be determined as though my death had then occurred and according to the laws of the State of California then in effect relating to the succession of separate property not acquired from a parent, grandparent, or previously deceased spouse." The word "issue" of necessity refers to Jason.

PROCEDURAL HISTORY

When the Will was admitted to probate, Mynatt was appointed executor by minute order dated September 18, 2019. Letters testamentary were issued to Mynatt on November 15, 2019.

In May 2021, the Kahlers filed two petitions in the probate court: (1) Petition for Instructions Regarding Testamentary Will and Testament of Caroline Hutaff and (2) Petition for Removal of Venus Mynatt as Executor and Appointment of Public Administrator. The Kahlers claimed that Hutaff's estate should be distributed directly to them as Jason's heirs.[3] The Kahlers contended that Jason had a fully vested interest in the testamentary trust upon Hutaff's death and, therefore, at the time of his death was entitled to receive distribution of the trust property.

Mynatt opposed both petitions. The parties submitted trial briefs, a joint list of stipulated facts, exhibits, and excerpts from Mynatt's deposition. A trial and oral argument were conducted in January 2023.

The probate court issued a final statement of decision and orders approving in part the Kahlers' petition for instructions and denying the Kahlers' petition to remove Mynatt as trustee of the testamentary trust. As to the petition for instructions, the court concluded: (1) the Will is not ambiguous in any way relevant to resolving the dispute; (2) the personal

---

[3] A March 2022 order entered in the matter of Jason's estate determined that each of the Kahlers was entitled to receive one-third of Jason's estate.

representative of Jason's estate is the beneficiary of Hutaff's tangible personal property;[4] (3) under the Will's plain and unambiguous language, the trustee of the testamentary trust created by the Will is the beneficiary of the residue of Hutaff's estate; (4) Mynatt is to serve as trustee of the testamentary trust, and (5) under the Will's plain and unambiguous language, the personal representative of Jason's estate is the beneficiary of the testamentary trust created by the Will.

In the statement of decision, the court recognized the consequences of its decision might seem inequitable: "Jason's half-siblings—children of [Hutaff]'s first ex-spouse and another woman, and strangers to the Decedent—appear likely to receive [Hutaff]'s tangible personal property and the entire residue of her estate, instead of [Hutaff]'s sibling [Mynatt]. But it must be remembered that the Decedent created her will more than 30 years before her death. She never revoked or amended it. Jason was the primary object of the Decedent's bounty, so long as he survived her. He did. The fact that Jason died without an estate plan was not a contingency the Decedent addressed in her own estate plan, and perhaps never contemplated."

The trial court signed and entered a "judgment" in accordance with the statement of decision. We treat the judgment as an order made appealable by Probate Code sections 1300, 1303, and/or 1304. (See *Estate of Stoddart* (2004) 115 Cal.App.4th 1118, 1125.) Mynatt timely appealed.

---

[4] Mynatt does not contest the disposition of Hutaff's personal and tangible property.

6

DISCUSSION

I.

PRINCIPLES GOVERNING INTERPRETATION OF
A WILL AND STANDARD OF REVIEW

A will must be construed according to the testator's intent expressed by the terms of the will, and that intent must be given effect to the extent possible. (*Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 134.) Extrinsic evidence is admissible to aid in the interpretation of an ambiguous part of a will. (*Estate of Dodge* (1971) 6 Cal.3d 311, 318.) If no extrinsic evidence was submitted, or the extrinsic evidence is not in conflict, the appellate court independently construes the terms of a will. (*Ibid.*)

Probate Code section 21102 sets out three fundamental principles applicable to determining a testator's intent: (1) "The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument" (*id.*, subd. (a)); (2) "The rules of construction in this part apply where the intention of the transferor is not indicated by the instrument" (*id.*, subd. (b)); (3) "Nothing in this section limits the use of extrinsic evidence, to the extent otherwise authorized by law, to determine the intention of the transferor" (*id.*, subd. (c)).

As relevant here, the rules of construction referred to in section 21102, subdivision (b) are: (1) "The words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative" (*id.*, § 21120); (2) "All parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole" (*id.*, § 21121); (3) "If the meaning of any part of an instrument is ambiguous or doubtful, it may be explained by any reference to or recital of that part in another part of the instrument"

7

(*ibid.*); (4) "The words of an instrument are to be given their ordinary and grammatical meaning unless the intention to use them in another sense is clear and their intended meaning can be ascertained" (*id.*, § 21122).

II.

## UNDER ARTICLE III OF THE WILL, THE TESTAMENTARY ESTATE MUST BE DISTRIBUTED TO MYNATT

Mynatt contends the trial court misinterpreted the Will. We agree. Under Article III, section 3 of the Will, the residue of Hutaff's estate should be distributed outright to Mynatt because Jason, upon his death, had not become entitled to receive distribution of the entire trust.

Under Article III of the Will, upon Hutaff's death the residue of her estate would be given in trust to Mynatt, who would serve as trustee of the testamentary trust. Thus, when Hutaff died in March 2019, the residue of her estate became a testamentary trust with Mynatt as trustee and Jason as beneficiary. Under Article III, section 2, when Jason turned 35, the trustee would divide the testamentary estate in half and distribute one half to Jason. The other half would be distributed to Jason when he turned 40.

As Mynatt argues, Article III, section 2 does not condition creation of the testamentary trust on Jason having attained the age of 40 at Hutaff's death. Instead, Hutaff's death was the only condition to creation of the testamentary trust. Article III, section 2 instructs the trustee on distributing trust proceeds. Section 2 provides that if Jason has attained the age of 40 "*at the time the trust estate is divided into separate shares*, the Trustee shall, *upon making the division*, distribute to [Jason] . . . all of his share." The division referred to must be the first sentence of section 2 of Article; that is, to the division of the trust estate into halves. Although Jason was 56 at the time of Hutaff's death, his entitlement to distribution of the

8

trust estate was contingent upon and vested at "at the time the trust estate is divided into separate shares."

At the time of Jason's death, Mynatt, as trustee, had not yet divided the trust estate into separate shares. This was through no fault of Mynatt: Jason's death appears to have been unforeseen and unexpected. Administration status reports show that between the date the letters testamentary were issued to Mynatt (November 2019) and Jason's death (March 2020) Mynatt was marshalling estate assets and searching and reviewing Hutaff's mail and other papers to locate known creditors. A partial inventory was filed in May 2020.

The Kahlers argue, and the trial court concluded, that a beneficiary's right of distribution from a testamentary trust vests upon the testator's death because at that time the beneficiary obtains equitable title to the trust property. "'If the will creates an express trust, the legal title of the trustee and the equitable title of the beneficiary vest as of the date of death, even though the  trust estate is residuary in character.'" (*Estate of Muhammad* (1971) 16 Cal.App.3d 726, 733.) But obtaining equitable title does not equate to the right to distribution. "[*T*]*he beneficiary of a trust takes no estate in the property itself* and that title vests in the trustee with the right in the beneficiary *to enforce performance* of the trust." (*Ibid*., quoting, *Estate of Troy* (1931) 214 Cal. 53, 56, italics added.)

When Hutaff died, Jason obtained equitable title in the testamentary trust with a right to enforce the terms of the trust. Nothing in the record shows that Jason petitioned the probate court to instruct Mynatt to take any action regarding the testamentary trust. Further, Jason died before a decree of distribution was issued. California Rules of Court, rule 7.650, entitled "Decree of distribution establishing testamentary trust,"

9

states that upon distribution, the probate court must: "(1) Determine whether or not a valid trust has been created by the will; [¶] (2) Determine the terms of the trust; and [¶] (3) Order distribution of the trust property to the trustee." (Cal. Rules of Court, rule 7.650(a).) No such order had been made in this case when Jason died. As Mynatt argues, at the time of his death, Jason had only "an *expectation* of distribution, a *potential* entitlement. . . ."

The trial court's statement of decision does not address Article IV, section C of the Will which, along with Article III, addresses the contingency of Jason's death. Article IV provides for the distribution of the trust property to Hutaff's heirs "[i]f at the time of my death, or at any later time *before full distribution* of the trust estate, all my issue are deceased and no other disposition of the property is directed by this Will." (Italics added.) Jason died before "full distribution of the trust estate." No other disposition of the trust property is directed by the Will. Therefore, under Article IV, section C, the trust property would pass to *Hutaff's* heirs, not *Jason's* heirs, even if Jason had become entitled to receive distribution of the entire trust estate before he died.

Our interpretation of the Will gives effect to each provision and to Hutaff's testamentary intent. That intent is unambiguously demonstrated by Articles III and IV of the Will. Hutaff intended that Jason be taken care of during his lifetime but, if he died before he became entitled to full distribution of the testamentary estate, the bulk of her estate—everything except tangible personal property—would pass to her sister Mynatt (Article III) or her heirs (Article IV). Neither section III nor section IV of the Will permits the trust property to pass to the Kahlers, whose existence was unknown to Hutaff and Jason.

10

Hutaff created her Will in 1986 and never amended it. She knew at the time of her death that Jason, her only issue, had no children and, therefore, believed her heirs would be Jason or her siblings and nobody else. The Kahlers and trial court's interpretation of the Will defeats Hutaff's intentions.

## DISPOSITION

The order is reversed and the matter is remanded for rendition and entry of an order consistent with this opinion. Mynatt may recover costs on appeal.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


GOODING, J.